[Crim. No. 1813.   Third Dist.   Feb. 16, 1943.]

In re ANITA WHITNEY, on Habeas Corpus.

Andersen & Resner for Petitioner.

A. L. Wirin, Arthur Garfield Hays, Osmond K. Fraenkel, Clifford Forster, Wayne M. Collins, Clarence E. Rust, E. W. Camp and Fred Okrand, as Amici Curiae on behalf of Petitioner.

Hugh B. Bradford, City Attorney (Sacramento), for Respondent.

THOMPSON, J.—This is a petition for a writ of habeas corpus filed in this court subsequent to the arrest of petitioner for the alleged violation of a Sacramento city ordinance. The petitioner was admitted to bail and the city of Sacramento has made its return to the petition.

Petitioner was arrested on October 4, 1942, in the Sacramento City Plaza, which is one of the city parks, by police officers of the city of Sacramento. On this occasion, petitioner, who was a candidate for the office of Controller of the State of California, was attempting to speak in support of her candidacy for such office and in support of the platform of the Communist party in connection with the forthcoming general election.

The arrest was made for the alleged violation of Ordinance No. 638, Fourth Series, of the city of Sacramento, which provides as follows:

"An ordinance making it unlawful to make public address, discharge firearms, expose for sale any goods, erect booths or stands on public grounds without permit, and making this ordinance an emergency measure to take effect immediately.

"Be It Enacted by the Council of the City of Sacramento:

"Section 1. No person shall, in or upon any of the public grounds make any public address, discharge any cannon or firearm, expose for sale any goods, wares, or merchandise, erect or maintain any booth, stand or show, except in accordance with a permit from the City Manager.

"Section 2. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine of not exceeding One Hundred Dollars ($100.00) or by imprisonment in the City Jail for a period not to exceed Thirty (30) days.

"Section 3. This ordinance is hereby declared to be an emergency measure and shall take effect immediately, such emergency being that public parks and grounds in the City have been made the location for speeches and addresses to the annoyance of the citizens and the said annoyance will undoubtedly increase if such public addresses are not prohibited and give rise to public disturbances.

PASSED: September 20, 1934.
EFFECTIVE: September 20, 1934.

THOS. P. SCOLLAN,

Mayor,

Attest:

H. G. DENTON, City Clerk."

Petitioner, at the time of her arrest, had made no attempt to obtain a permit from the city manager in accordance with the provisions of section 1 of the city ordinance, and it is because of this failure that the arrest was made.

■ It is contended that the ordinance in question is void and unconstitutional upon its face as being violative of the Fourteenth Amendment to the Constitution of the United States, and article I, sections 9 and 10, of the Constitution of the State of California, in that said ordinance denies freedom of speech and assemblage. It is urged that said ordinance by its terms is prohibitory and cannot be deemed one of regulation. Petitioner also asserts that the ordinance was administered, enforced, and applied, as against her, in an unconstitutional manner, as the evidence fails to disclose any public disturbance or disorder.

The respondent, city of Sacramento, urges that the ordinance is to be viewed as a regulatory measure enacted under the police power of the municipality and in conformity with the mandate of the due process clause of the Fourteenth Amendment to the Constitution. It is the position of respondent that the determination of the validity of the ordinance should be from a consideration of the ordinance as

regulatory rather than as affecting the constitutional guarantees of free speech.

The language of "Ordinance No. 638, Fourth Series," which is pertinent to the question raised by the petition in the instant case is contained in section 1 thereof, and is as follows:

"No person shall, in or upon any of the public grounds make any public address . . . except in accordance with a permit from the City Manager."

Section 3 of the ordinance indicates the purpose in view in the passage thereof and is contained in the language already quoted which refers to the annoyance of citizens resulting from speeches and addresses which have been made in the public parks and grounds.

It is the province of this court to determine the question as to whether the quoted language of Ordinance No. 638 prohibits freedom of speech and assemblage in violation of the Fourteenth Amendment to the Constitution of the United States and the Constitution of the State of California. It should be stated, preliminarily, that any ordinance which requires the procuring of a permit as a condition precedent to making a public address "in or upon any of the public grounds" should necessarily be examined for the purpose of determining a possible infringement upon the right of freedom of speech. Such an approach to an ordinance would be particularly necessary where as in the instant case the provisions of the ordinance fail to indicate that the procuring of a permit is simply for the purpose of regulating public addresses with respect to the proper time and place. Ordinance No. 638 does not specify that a permit from the city manager is required for the purpose of preventing a conflict as to the time or place of public addresses which might be made. Nor does the ordinance by its terms confine its application to the "City Plaza Park" or any other particular park or grounds within the city of Sacramento, but on the contrary its provisions prohibit the making of a public address "in or upon *any* of the public grounds" within the city of Sacramento. (Italics ours.)

In the case of *Hague* v. *Committee for Industrial Organization*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423], strongly relied upon by petitioner, the validity of a similar municipal ordinance was before the Supreme Court for consideration

and was there declared unconstitutional. The ordinance in the Hague case, passed by Jersey City, New Jersey, required the obtaining of a permit for a public assembly in or upon the public streets, highways, public parks, or public buildings of the city. The Director of Public Safety was authorized by the terms of the ordinance, for the purpose of preventing riots, disturbances or disorderly assemblage, to refuse a permit after investigation of the facts. The opinion of the Director of Public Safety was the controlling factor in refusing or granting the permit. This ordinance was declared unconstitutional in the following language, found at page 516 (1437) of the opinion:

''We think the court below was right in holding the ordinance quoted in Note 1 void upon its face. It does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.' It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly 'prevent' such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right.''

It must be conceded that the intended purposes set forth in the provisions of the Jersey City ordinance, in the preventing of riots, disturbances, and disorderly assemblage, do constitute, at least upon the face of the ordinance, some good cause for the requirement of a permit in order to allow a public assembly.

The provisions of the Sacramento city ordinance, under consideration, do not, however, even purport to set up such a standard in justification of official action authorizing the granting or the refusal of a permit for the making of a public address. It is true that section 3 of the Sacramento ordinance does indicate that an emergency situation has arisen in regard to public parks and that citizens are annoyed by public addresses which take place. Such a statement, within the provisions of the ordinance, set forth for the purpose of justifying the granting or refusal of a permit do not, however, in our opinion even conform to the standard embodied in the Jersey City ordinance. The Sacramento or-

dinance is more restrictive in its terms than the Jersey City ordinance.

We are aware of the fact that the Sacramento city ordinance reads practically word for word with the old Boston Commons ordinance which was considered by the Supreme Court in *Davis* v. *Massachusetts*, 167 U.S. 43, 44 [17 S.Ct. 731, 42 L.Ed. 71], and that the Supreme Court at that time, in 1897, declared the Boston Commons ordinance to be constitutional. It is also true that Mr. Justice Roberts in the opinion in the Hague case, *supra*, did use language in referring to the ordinance considered in the Davis case, which apparently distinguished the old Boston Commons ordinance from the Jersey City ordinance which was declared unconstitutional. Further language used by Mr. Justice Roberts indicates however that a consideration of the Boston Commons ordinance at that time might have resulted in a contrary conclusion. That language at page 515 (1436) of the opinion in the Hague case, *supra*, is as follows:

"We have no occasion to determine whether, on the facts disclosed, the Davis Case was rightly decided, but we cannot agree that it rules the instant case. Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied."

Although the Supreme Court by its opinion in the Hague case, *supra*, does not specifically reverse its decision in the Davis case, *supra*, it is our opinion that, in effect, just such a result is the only reasonable interpretation of the decision of the court in the Hague case. The language of the opinion in the latter case, which declares the Jersey City ordinance unconstitutional, is not susceptible to any other reasonable conclusion.

An ordinance prohibiting the distribution of leaflets and other literature, except by permit from the city manager, was declared void by the Supreme Court in the case of *Lovell* v. *Griffin,* 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949], in an opinion delivered by Chief Justice Hughes. This ordinance, enacted by the city of Griffin, Georgia, so far as pertinent, provided as follows:

"Section 1. That the practice of distributing, either by hand or otherwise, circulars, handbooks, advertising, or literature of any kind, whether said articles are being delivered free, or whether same are being sold, within the limits of the City of Griffin, without first obtaining written permission from the City Manager of the City of Griffin, such practice shall be deemed a nuisance, and punishable as an offense against the City of Griffin."

At page 451 (953) of the opinion we find the following language:

"The ordinance is not limited to 'literature' that is obscene or offensive to public morals or that advocates unlawful conduct. There is no suggestion that the pamphlet and magazine distributed in the instant case were of that character. The ordinance embraces 'literature' in the widest sense. . . . We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor."

The Sacramento city ordinance, like the ordinance of the city of Griffin, which was considered in the Lovell case, is in our opinion of the same character, one imposing censorship on the freedom of speech, and the motive inducing its adoption thereby becomes unimportant.

In the case of *Schneider* v. *State,* 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155], an ordinance quite similar in nature and purpose to the one which was considered by the court in the Lovell case, *supra,* was also declared void. In commenting upon this ordinance passed by the Town of Irvington, New Jersey, the court at page 163 (165) of the opinion said:

"As we have pointed out, the public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication

of information and opinion secured by the Constitution.''

And on page 161 (164) of this same opinion we find this very strong and convincing language:

''This court has characterized the freedom of speech and that of the press as fundamental personal rights and liberties. . . .

''In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions.''

The language quoted from the Schneider case, referring to legislation respecting matters of public convenience, does in our opinion apply quite aptly to the consideration of the validity of the Sacramento city ordinance. Section 3 of the ordinance specifies as an only reason for the prohibition of public addresses, except by permit, the annoyance to the citizens as a result of such speeches and addresses. Freedom of speech is one of those rights which is vital to the maintenance of a democratic form of government, and an ordinance which prohibits the right of public speech upon public grounds, except by special permit, simply because of the stated reason that citizens have been annoyed, is therefore insufficient and unconstitutional.

Respondent earnestly contends that late decisions of the Supreme Court of the United States indicate a changed view from that announced in the Lovell case, *supra,* and that a consideration of the Sacramento ordinance at this time by the Supreme Court, in view of late expression, would result in declaring such ordinance valid. In support of this argument the respondent relies upon the decisions in *Valentine* v. *Chrestensen,* 316 U.S. 52 [62 S.Ct. 920, 86 L.Ed. 1262], and *Jones* v. *Opelika,* 316 U.S. 584 [62 S.Ct. 1231, 86 L.Ed. 1691], in which cases the Supreme Court held valid municipal ordinances regulating the distribution and sale of certain literature, and advertising matter.

The ordinance before the court for consideration in the Valentine case, *supra,* was passed by the city of New York, and made a part of the Sanitary Code. The ordinance pro-

hibited distribution in the streets of the city of all commercial and business advertising matter. Chrestensen, a resident of Florida, was exhibiting a submarine which had formerly been a part of the United States Navy. In connection with the exhibit, he had prepared handbills advertising the boat and soliciting visitors for a stated admission fee. On his attempt to distribute the handbills he was advised that his action would violate the city ordinance, but that he might freely distribute handbills solely devoted to "information or a public protest." Chrestensen then prepared a double-faced handbill which on one side contained commercial advertising matter pertaining to the submarine and on the other side a protest against the action of the City Dock Department in refusing wharfage facilities for the exhibition of the submarine. The city police restrained the distribution of these handbills, and their action under the authority of the city ordinance was upheld in the following language found at page 54 (1265) of the opinion:

"This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising. . . . If the respondent was attempting to use the streets of New York by distributing commercial advertising, the prohibition of the code provision was lawfully invoked against his conduct. . . . It is enough for the present purpose that the stipulated facts justify the conclusion that the affixing of the protest against official conduct to the advertising circular was with the intent, and for the purpose, of evading the prohibition of the ordinance."

In the language of the Supreme Court, the ordinance in the Lovell case, *supra,* "embraces 'literature' in the widest sense," and did not restrict its prohibition to the distribution on the streets of the city of "purely commercial advertising," as was true with the ordinance considered by the court in the Valentine case, *supra.* The decision of the court in the Valentine case does not lend support to the contention of respondent.

The ordinance for consideration before the court in the Opelika case, *supra*, as was true with the ordinance considered in the Valentine case, is primarily directed to the distribution of commercial advertising matter and the sale of literature. The ordinance simply regulates the activities of the individuals involved in carrying on these commercial transactions by exacting a reasonable and non-discriminatory license fee, and only in that indirect manner may the ordinance be deemed to limit the constitutional rights of freedom of religion, freedom of speech, and freedom of the press.

This conclusion as to the construction of the ordinance is found in the language of the court at page 596 (1701) of the opinion, which reads as follows:

"Casual reflection verifies the suggestion that both teachers and preachers need to receive support for themselves as well as alms and benefactions for charity and the spread of knowledge. But when, as in these cases, the practitioners of these noble callings choose to utilize the vending of their religious books and tracts as a source of funds, the financial aspects of their transactions need not be wholly disregarded. To subject any religious or didactic group to a reasonable fee for their money-making activities does not require a finding that the licensed acts are purely commercial. It is enough that money is earned by the sale of articles. . . . Careful as we may and should be to protect the freedoms safeguarded by the Bill of Rights, it is difficult to see in such enactments a shadow of prohibition of the exercise of religion or of abridgment of the freedom of speech or the press. . . . If we were to assume, as it is here argued, that the licensed activities involve religious rites, a different question would be presented. These are not taxes on free will offerings. But it is because we view these sales as partaking more of commercial than religious or educational transactions that we find the ordinances, as here presented, valid."

We are unable to agree with respondent in its contention that the Supreme Court has by its decisions announced in the Valentine and Opelika cases abandoned its position or previous views as declared by that court in the opinion rendered in the case of *Lovell* v. *Griffin, supra*. We are also unable to discover any language in the later cases which lends support to or upholds the validity of the Sacramento City ordinance which is before us for consideration.

Sacramento City Ordinance No. 638, Fourth Series, for reasons which have been previously stated, is void upon its face. It denies the constitutional right of freedom of speech and assemblage in violation of the Fourteenth Amendment to the Constitution of the United States, and article I, sections 9 and 10, of the Constitution of the State of California.

The ordinance by its terms is not regulatory but on the contrary it is prohibitory. The provisions thereof fail to indicate that comfort or convenience in the use of the city parks and grounds is a consideration for the enactment of the ordinance. Contrary to the contention of respondent, the provision requiring the procuring of a permit from the city manager confers upon him the discretion of absolutely denying such a permit. The ordinance, also, by its terms applies generally to all Sacramento public parks and grounds.

We do not deem it necessary to comment on other cases cited by respondent. Those cases do not in our opinion contain any language which is contrary to our conclusion in regard to the validity of the Sacramento city ordinance. In view of our conclusion that the ordinance is invalid upon its face, it is unnecessary to consider further the contention of petitioner regarding the question of unconstitutional administration of the ordinance.

Petitioner has been denied her constitutional rights of freedom of speech and it is therefore ordered that the writ of habeas corpus be granted and that the petitioner be discharged from custody.

Adams, P. J., and Schottky, J. pro tem., concurred.