THE PROGRESSIVE ACTION COORDINATING TEAM, AN UNINCORPORATED ASSOCIATION, *ET AL.*, PLAINTIFFS, v. CITY OF ORANGE, NEW JERSEY, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided May 27, 1970.

*Mr. Melvyn H. Bergstein* argued the cause for plaintiffs (*Messrs. Silverman & Bergstein,* attorneys).

*Mr. Jeffrey R. Lowe* argued the cause for defendants.

HERBERT, J. S. C. This is an action testing the constitutional validity of a licensing ordinance of the City of Orange. The plaintiffs are The Progressive Action Coordinating Team ("PACT"), a politically motivated association, and various individuals who are presumably members of PACT. Named as defendants are the City of Orange, its mayor, its director of public safety, and its chief of police.

The action was commenced by a complaint and order to show cause. Initially both temporary and permanent relief were sought. The temporary relief asked was a restraint against interfering — solely on the basis that plaintiff had not obtained a permit — with certain activities scheduled for December 1969 and sponsored by PACT for the purpose of protesting American involvement in the conflict in Vietnam. That relief was granted and the questions raised with regard to temporary restraints are now moot. By way of permanent relief plaintiffs seek a declaratory judgment that the Orange ordinance is unconstitutional and an injunction against its enforcement. The claim of unconstitutionality is based entirely on the ordinance as written, and not as it has been applied. That being so, the parties have agreed, with the approval of the Court, to have the case summarily considered. Briefs have been submitted by counsel on each side, each brief containing an identical stipulated statement of facts and a detailed discussion of the law.

The provision in question is Section 5 of an ordinance enacted by the City of Orange on or about August 17, 1954, entitled "Aggregations of People." Section 5 reads as follows:

No parades or other prearranged aggregations of people shall be permitted on the streets or sidewalks of the City of Orange until written permission for the same shall have been obtained from the Director of the Department of Public Safety. Requests for such permission must be made in writing and must specify the route to be taken, the time and purpose of the parade, the sponsor or such other information as shall be required by said Director for such parade or aggregation except as provided under Section 39:43–197.1 [39:4–197.1] of the revised statutes.

Plaintiffs argue that this provision is invalid on two related grounds. First, they say, it is a "previous restraint" on the freedoms of speech and assembly in violation of the First and Fourteenth Amendments to the United States Constitution. Second, it is violative of the Fourteenth Amendment's "due process" clause, because it fails to specify the standards by which the Director of Public Safety should guide himself in exercising his discretion on the issuance of permits. Defendants, on the other hand, remind the court that the freedoms of speech and assembly are not absolute; they contend that Section 5 does not place unbridled discretion in the director, but rather constitutes a reasonable and valid exercise of police power by a municipality trying to cope with such real problems as crowd control and flow of traffic.

The case at hand is not without precedent. Various ordinances similar to Section 5 of the Orange ordinance have been tested in the courts in the past, and a number of them have reached, and been finally determined by, the United States Supreme Court. In almost all of these cases, the ordinances have been struck down on the grounds urged here by plaintiffs.

*Hague v C. I. O.*, 307 *U. S.* 496, 59 *S. Ct.* 954, 83 *L. Ed.* 1423 (1939), involved a Jersey City ordinance prohibiting "public parades or public assembly in or upon the public streets, highways, public parks or public buildings" without a permit issued by the Director of Public Safety. The ordinance provided in part:

3. The Director of Public Safety is hereby authorized to refuse to issue said permit when, after investigation of all of the facts and circumstances pertinent to said application, he believes it to be proper to refuse the issuance thereof; provided, however, that said permit shall only be refused for the purpose of preventing riots, disturbances or disorderly assemblage. [307 *U. S.* at 502, 59 *S. Ct.* at 958]

Although there was no majority opinion, the Supreme Court having been divided over the proper scope to be accorded to the Fourteenth Amendment's "privileges and immunities" clause, it is clear from the separate opinions that a majority of the justices concluded that the Jersey City ordinance was void on its face. As Mr. Justice Roberts stated, speaking for himself and Mr. Justice Black:

We think the court below was right in holding the ordinance . . . void upon its face. It does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent "riots, disturbances or disorderly assemblage." It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly "prevent" such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right. [307 *U. S.* at 516, 59 *S. Ct.* at 964]

In *Saia v. New York*, 334 *U. S.* 558, 68 *S. Ct.* 1148, 92 *L. Ed.* 1574 (1948), the Supreme Court considered a municipal ordinance prohibiting the use of sound amplifying devices on the streets and in public places. The ordinance contained this exception to the general proscription:

Section 3. Exception. — Public dissemination, through radio loudspeakers, of items of news and matters of public concern and athletic activities shall not be deemed a violation of this section provided that the same be done under permission obtained from the Chief of Police [334 *U. S.* at 558, 68 *S. Ct.* at 1148]

The majority opinion was written by Mr. Justice Douglas, who said in part:

We hold that § 3 of this ordinance is unconstitutional on its face, for it establishes a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against State action. To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell v. Connecticut*, 310 *U. S.* 296, 60 *S. Ct.* 900, 84 *L. Ed.* 1213, 128 *ALR* 1352; *Lovell v. City of Griffin*, 303 *U. S.* 444, 58 *S. Ct.* 666, 82 *L. Ed.* 949, and *Hague v. Committee for Industrial Organization*, 307 *U. S.* 496, 59 *S. Ct.* 954, 83 *L. Ed.* 1423. [334 *U. S.* at 559–60, 560, 68 *S. Ct.* at 1149]

*Kunz v. New York*, 340 *U. S.* 290, 71 *S. Ct.* 312, 95 *L. Ed.* 280 (1951), dealt with a city ordinance requiring a permit for assemblages of persons for public worship, but which did not specify the reasons for which the issuance of permits could be refused. The ordinance was held unconstitutional in a majority opinion written by Chief Justice Vinson:

It is noteworthy that there is no mention in the ordinance of reasons for which such a permit application can be refused. This interpretation allows the police commissioner, an administrative official, to exercise discretion in denying subsequent permit applications on the basis of his interpretation, at that time, of what is deemed to be conduct condemned by the ordinance. We have here, then, an ordinance which gives an administrative official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights. [340 *U. S.* at 293, 71 *S. Ct.* at 314]

*Niemotko v. Maryland*, 340 *U. S.* 268, 71 *S. Ct.* 325, 328, 95 *L. Ed.* 267 (1951), and *Cox v. Louisiana*, 379 *U. S.* 536, 85 *S. Ct.* 453, 13 *L. Ed.* 2d 471 (1965), did not deal with licensing ordinances, but both decisions contain language relevant here. In *Niemotko* the Supreme Court reversed disorderly conduct convictions of Jehovah's Witnesses who had used a public park for Bible talks without a permit. Chief Justice Vinson wrote for the Court:

This Court has many times examined the licensing systems by which local bodies regulate the use of their parks and public places * * * In those cases this Court condemned statutes and ordinances which required that permits be obtained from local officials as a prerequisite to the use of public places, on the grounds that a license requirement constituted a prior restraint on freedom of speech, press and religion, and, in the absence of narrowly drawn, reasonable and definite standards for the officials to follow, must be invalid. * * * In the instant case we are met with no ordinance or statute regulating or prohibiting the use of the park; all that is here is an amorphous "practice," whereby all authority to grant permits for the use of the park is in the Park Commissioner and the City Council. No standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served. It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here. [340 U. S. at 271–272, 71 S. Ct. at 327]

In *Cox* Mr. Justice Goldberg's majority opinion considered the application and enforcement of a Louisiana statute prohibiting the obstruction of public passages:

Although the statute here involved on its face precludes all street assemblies and parades, it has not been so applied and enforced by the Baton Rouge authorities. City officials who testified for the State clearly indicated that certain meetings and parades are permitted in Baton Rouge, even though they have the effect of obstructing traffic, provided prior approval is obtained.

*       *       *       *       *       *       *       *

The statute itself provides no standards for the determination of local officials as to which assemblies to permit or which to prohibit. Nor are there any administrative regulations on this subject which have been called to our attention. From all the evidence before us it appears that the authorities in Baton Rouge permit or prohibit parades or street meetings in their completely uncontrolled discretion.

*       *       *       *       *       *       *       *

A long line of cases in this Court makes it clear that a State or municipality cannot "require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be * * * disseminate [d] * * *" *Schneider v. State, supra,* 308 U. S. 147, at 164, 60 S. Ct. 146, at 152, 84 L. Ed. 155, at 166.

*       *       *       *       *       *       *       *

This Court has recognized that the lodging of such broad discretion in a public official allows him to determine which expressions of view will be permitted and which will not. This thus sanctions a de-

vice for the suppression of the communication of ideas and permits the official to act as a censor.

\*    \*    \*    \*    \*    \*    \*    \*

It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute. [379 *U. S.* at 555–558, 85 *S. Ct.* at 464]

A New Jersey case in point is *State v. Corbisiero*, 67 *N. J. Super.* 170 (Law Div. 1961), in which Judge Rosen declared unconstitutional two sections of an ordinance prohibiting various activities conducted in a public park without prior written permission of the Hudson County Park Commission. After a lengthy discussion of the cases on the subject, Judge Rosen concluded:

No standards of any kind are provided in this ordinance to guide the commission, the body vested with the power of ultimate decision, in approving or disapproving the issuance of a license. The purported power vested in the Commission in this respect is entirely unrestrained. No norm or standard of even minimal sufficiency is provided. \* \* \* The ordinance, which purports to be "rules and regulations," gives the Commission uncontrolled and limitless discretion in the administration and enforcement of sections 4 and 20 of said ordinance.

\*    \*    \*    \*    \*    \*    \*    \*

Sections 4 and 20 of ordinance No. 1 are invalid. They impair and abridge defendant's rights and liberties guaranteed by the First and Fourteenth Amendments to the United States Constitution. [67 *N. J. Super.* at 187]

The cases cited and discussed above clearly demonstrate the consttiutional invalidity of any licensing ordinance that allows an administrative official, in his uncontrolled discretion, to permit or deny the exercise of freedoms protected by the Bill of Rights. The fundamental infirmity of such an ordinance is in no way dependent on an actual abuse of the discretion accorded; it is simply that the discretion is susceptible to abuse.

*Cox v. New Hampshire*, 312 *U. S.* 569, 61 *S. Ct.* 762, 85 *L. Ed.* 1049 (1941), relied on by the City of Orange as

authority to the contrary, is inapposite. In *Cox,* the United States Supreme Court considered a New Hampshire statute as it had been construed by the highest court of that state. The statute on its face prohibited parades or processions upon public streets without a special license, and it contained no standards to be applied in the issuance of licenses. However, the New Hampshire Supreme Court had narrowly construed the statute to apply only to "organized formations of persons using the highways," and not to any other means of communicating ideas on the public streets. Further, the state court had limited the decision on the issuance of a license to considerations of time, place, and manner, so that the statute as applied was not without standards. It was under these circumstances that the United States Supreme Court held that the municipality "cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets." 312 *U. S.* at 576, 61 *S. Ct.* at 765.

Section 5 of the Orange ordinance prohibits "prearranged aggregations of people" on the public streets and sidewalks "until written permission for the same shall have been obtained from the Director of the Department of Public Safety." As is clear on its face, and as the City of Orange concedes, the ordinance sets forth no standards to guide the Director in the exercise of his discretionary power to grant or withhold the requisite permission. Judged by the principles enunciated here and in the cited cases, the ordinance must be held invalid.

In light of the result reached here, it is not necessary to decide plaintiffs' contention that Section 5 is also constitutionally defective because it requires that requests for a permit must specify, in addition to location and time, the purpose and sponsor of the proposed "aggregation of people," as well as "such other information as shall be required" by the Director. It is to be noted, however, that this provision calls for information that goes beyond the

proper considerations of "time, place and manner" set forth in *Cox v. New Hampshire, supra.*

In conclusion, it should be emphasized that this decision deals with the method, i. e. the ordinance, by which the City of Orange has sought to exercise its capacity to cope with problems stemming from aggregations of people on streets and sidewalks, and does not question the existence of power to control if properly exercised.

■ As Mr. Justice Goldberg said for the majority in *Cox v. Louisiana, supra,* [379 *U. S.* at p. 554, 85 *S. Ct.* at p. 464] after citing a list of authorities:

"From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection."

If, in practice, an aggregation of people should cause property damage, obstruct store entrances or the flow of traffic, or in any other way disturb the peace, there is no reason why action might not then be taken in accordance with ordinary police procedures to redress the situation.