## LOVELL *v.* CITY OF GRIFFIN.

No. 391.   Argued February 4, 1938.—Decided March 28, 1938.

*Mr. O. R. Moyle* for appellant.

*Messrs. Hughes Spalding* and *Sumter M. Kelley* submitted on brief for appellee.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. Francis Biddle* and *Osmond K. Fraenkel*, on behalf of the American Liberties Union, and by *Messrs. Samuel Slaff* and *George Slaff,* on behalf of the Workers' Defense League, in support of appellant.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Appellant, Alma Lovell, was convicted in the Recorder's Court of the City of Griffin, Georgia, of the violation of a city ordinance and was sentenced to imprisonment for fifty days in default of the payment of a fine of fifty dollars. The Superior Court of the county refused sanction of a petition for review; the Court of Appeals affirmed the judgment of the Superior Court (55 Ga. App. 609; 191 S. E. 152); and the Supreme Court of the State denied an application for certiorari. The case comes here on appeal.

The ordinance in question is as follows:

"Section 1. That the practice of distributing, either by hand or otherwise, circulars, handbooks, advertising, or literature of any kind, whether said articles are being delivered free, or whether same are being sold, within the limits of the City of Griffin, without first obtaining written permission from the City Manager of the City of Griffin, such practice shall be deemed a nuisance, and punishable as an offense against the City of Griffin.

"Section 2. The Chief of Police of the City of Griffin and the police force of the City of Griffin are hereby required and directed to suppress the same and to abate

any nuisance as is described in the first section of this ordinance."

The violation, which is not denied, consisted of the distribution without the required permission of a pamphlet and magazine in the nature of religious tracts, setting forth the gospel of the "Kingdom of Jehovah." Appellant did not apply for a permit, as she regarded herself as sent "by Jehovah to do His work" and that such an application would have been "an act of disobedience to His commandment."

Upon the trial, with permission of the court, appellant demurred to the charge and moved to dismiss it upon a number of grounds, among which was the contention that the ordinance violated the Fourteenth Amendment of the Constitution of the United States in abridging "the freedom of the press" and prohibiting "the free exercise of petitioner's religion." This contention was thus expressed:

"Because said ordinance is contrary to and in violation of the first amendment to the Constitution of the United States, which reads:

'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble and to petition the government for a redress of grievances.'

"Said ordinance is also contrary to and in violation of the fourteenth amendment to the Constitution of the United States, which had the effect of making the said first amendment applicable to the States, and which reads:

'All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

"Said ordinance absolutely prohibits the distribution of any literature of any kind within the limits of the City of Griffin without the permission of the City Manager and thus abridges the freedom of the press, contrary to the provisions of said quoted amendments.

"Said ordinance also prohibits the free exercise of petitioner's religion and the practice thereof by prohibiting the distribution of literature about petitioner's religion in violation of the terms of said quoted amendments."

The Court of Appeals, overruling these objections, sustained the constitutional validity of the ordinance, saying—

"The ordinance is not unconstitutional because it abridges the freedom of the press or prohibits the distribution of literature about the petitioner's religion, in violation of the fourteenth amendment to the constitution of the United States."

While in a separate paragraph of its opinion the court said that the charge that the ordinance was void because it violated a designated provision of the state or federal constitution without stating wherein there was such a violation, was too indefinite to present a constitutional question, we think that this statement must have referred to other grounds of demurrer and not to the objection above quoted which was sufficiently specific and was definitely ruled upon. The contention as to restraint "upon the free exercise of religion," with respect to the same ordinance, was presented in the case of *Coleman* v. *City of Griffin*, 55 Ga. App. 123, and the appeal was dismissed for want of a substantial federal question, 302 U. S. 636. *Reynolds* v. *United States*, 98 U. S. 145, 166, 167; *Davis*

450

v. *Beason,* 133 U. S. 333, 342, 343.   But, in the *Coleman* case, the Court did not deal with the question of freedom of speech and of the press, as it had not been properly presented.   We think that this question was adequately presented and was decided in the instant case.   Whether it was so presented and was decided is itself a federal question.   *Carter* v. *Texas,* 177 U. S. 442, 447; *Ward* v. *Love County,* 253 U. S. 17, 22; *First National Bank* v. *Anderson,* 269 U. S. 341, 346; *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113, 121.   This Court has jurisdiction.

Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action.   *Gitlow* v. *New York,* 268 U. S. 652, 666; *Stromberg* v. *California,* 283 U. S. 359, 368; *Near* v. *Minnesota,* 283 U. S. 697, 707; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 244; *De Jonge* v. *Oregon,* 299 U. S. 353, 364.   See, also, *Palko* v. *Connecticut,* 302 U. S. 319.   It is also well settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment. *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20; *Home Telephone & Telegraph Co.* v. *Los Angeles,* 227 U. S. 278; *Cuyahoga River Power Co.* v. *Akron,* 240 U. S. 462.

The ordinance in its broad sweep prohibits the distribution of "circulars, handbooks, advertising, or literature of any kind."   It manifestly applies to pamphlets, magazines and periodicals.   The evidence against appellant was that she distributed a certain pamphlet and a magazine called the "Golden Age."   Whether in actual administration the ordinance is applied, as apparently it could be, to newspapers does not appear.   The City Manager testified that "every one applies to me for a

license to distribute literature in this City. None of these people (including defendant) secured a permit from me to distribute literature in the City of Griffin." The ordinance is not limited to "literature" that is obscene or offensive to public morals or that advocates unlawful conduct. There is no suggestion that the pamphlet and magazine distributed in the instant case were of that character. The ordinance embraces "literature" in the widest sense.

The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation "either by hand or otherwise." There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the City Manager.

We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his "Appeal for the Liberty of Unlicensed Printing." And the liberty of the press became initially a right to publish *without* a license what formerly could be published only *with* one." [1] While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the

[1] See Wickwar, "The Struggle for the Freedom of the Press," p. 15.

452

constitutional provision. See *Patterson* v. *Colorado,* 205 U. S. 454, 462; *Near* v. *Minnesota,* 283 U. S. 697, 713–716; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 245, 246. Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form.

The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. What we have had recent occasion to say with respect to the vital importance of protecting this essential liberty from every sort of infringement need not be repeated. *Near* v. *Minnesota, supra; Grosjean* v. *American Press Co., supra; De Jonge* v. *Oregon, supra.*[2]

The ordinance cannot be saved because it relates to distribution and not to publication. "Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value." *Ex parte Jackson,* 96 U. S. 727, 733. The license tax in *Grosjean* v. *American Press Co., supra,* was held invalid because of its direct tendency to restrict circulation.

As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. She was

[2] See also, *Starr Company* v. *Brush,* 185 App. Div. (N. Y.) 261; 172 N. Y. S. 851; *Dearborn Publishing Co.* v. *Fitzgerald,* 271 Fed. 479; *In re Campbell,* 64 Cal. App. 300; 221 Pac. 952; *Coughlin* v. *Sullivan,* 100 N. J. L. 42; 126 Atl. 177. Compare *People* v. *Armstrong,* 73 Mich. 288; 41 N. W. 275; *Chicago* v. *Schultz,* 341 Ill. 208; 173 N. E. 276; *People* v. *Armentrout,* 118 Cal. App. Supp. 761; 1 P. 2d 556.

entitled to contest its validity in answer to the charge against her. *Smith* v. *Cahoon*, 283 U. S. 553, 562.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Cardozo took no part in the consideration and decision of this case.