**H. W. DENTON and International Union of Electrical, Radio and Machine Workers, CIO,**

**v.**

**CITY OF CARROLLTON, GEORGIA, a Municipal Corporation; P. L. Shaefer, as Mayor of Carrollton, Georgia; E. R. Threadgill, as Chief of Police of Carrollton, Georgia; J. L. Thomasson, as City Supervisor of Carrollton, Georgia; B. C. Barnes, E. R. McGee, H. W. Richards and C. H. Lumpkin, as Members of the City Council of the City of Carrollton, Georgia.**

**No. 341.**

United States District Court
N. D. Georgia, Newman Division.

June 6, 1955.

Adair & Goldthwaite, Atlanta, Ga., Benjamin C. Sigal, Bert Diamond, Washington, D. C., for plaintiff.

Shirley C. Boykin, H. Lamar Knight, Carrollton, Ga., W. Glen Harlan, Atlanta, Ga., for respondents.

HOOPER, Chief Judge.

H. W. Denton, a resident of Georgia and a labor union organizer for the International Union of Electrical, Radio and Machine Workers, CIO of Washington, D. C., brought this action against the City of Carrollton, Georgia, and its Mayor, Chief of Police, Members of Council, and other officials, seeking to enjoin defendants from instituting or prosecuting criminal proceedings against him in the event petitioner in the future should violate a certain ordinance by the

City Council, which he contends to be invalid and unconstitutional.

The ordinance in question provides that any person \* \* \* who engages in \* \* \* the profession, business enterprise or occupation in the capacity of a labor union agent \* \* \* promotor \* \* \* or organizer, shall file written application with the Mayor \* \* \* giving his name, age, place of origin, criminal record, if any, and other data as to affiliation, employment and reliability, and no such license shall be approved except by Act of the Mayor and Council. Upon approval of the application the applicant shall pay a license tax in the amount of $1,000 and each day thereafter the sum of $100 for the continuance of such license.

The penalty for violation of such ordinance shall be a fine not exceeding $100 or imprisonment for a period not exceeding 60 days, or both.

Since it is the opinion of this Court that it is improper for this Court in these proceedings, to pass upon the validity or invalidity of the ordinance in question, the various grounds upon which the ordinance is attacked need not be here enumerated but to some extent will be referred to below.

■ Neither is it necessary for this Court to discuss the various grounds upon which the plaintiff invokes the jurisdiction of this Court, for the Court is assuming jurisdiction upon the theory that jurisdiction is properly based upon the allegations that the acts of defendant should be enjoined as a violation of the Civil Rights Acts of Congress, 28 U.S. C.A. § 1343.

Jurisdiction is not predicated upon allegations that the amount involved exceeds $3,000, same being the amount plaintiff union might have realized through obtaining members, as that would be speculative. The controversy does not exist between an employer and its employees, and no injunction is sought by the Labor Board; it is not necessary to decide whether this Court has jurisdiction because the ordinance allegedly and unlawfully prevents plaintiffs from exercising their rights to organize the employees pursuant to the National Labor-Management Relations Act, 29 U.S.C.A. § 141 et seq.

■ Although there are many issues raised by counsel for both sides in their comprehensive briefs containing many citations, this Court finds it necessary to discuss only the grounds upon which this Court is denying the prayers of the complaint, that is to say, because this is not a proper case in which the equity side of a federal court should enjoin contemplated criminal proceedings by the municipality of the state, nor is it a proper case for the United States Court to grant an injunction to stay proceedings in a state court. 28 U.S.C.A. § 2283.

(1) Essentially plaintiffs' prayers are denied upon authority of the ruling by the Supreme Court of the United States in case of Douglas v. City of Jeannette, 319 U.S. 157(5), 63 S.Ct. 877, 87 L.Ed. 1324, which reads in part as follows:

"It is the policy of Congress generally to leave to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved, and the federal courts should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts \* \* \* and equitable remedies infringing this independence of the States—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds, p. 163." Douglas v. City of Jeannette, supra, 319 U.S. at page 158, 63 S.Ct. at page 877.

The opinion in the case just cited seems to answer one by one all of the arguments urged by plaintiffs in this case in their complaint and brief, such as the following:

That the ordinance violates freedom of speech under the First Amendment, that it violates plaintiffs' civil rights under the Fourteenth Amendment, etc. It

points out among other things, the following:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. Davis & Farnum Mfg. Co. v. City of Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927." Douglas v. City of Jeannette, supra, 319 U.S. at page 163, 63 S.Ct. at page 881.

This Court can conceive of no reason why any and all of the attacks made upon the ordinance in question could not be urged by plaintiff Denton should he elect to proceed with his organizational efforts without obtaining a license and should he be prosecuted therefor. His constitutional questions regarding the ordinance could be made in the proper court of the City of Carrollton and a review of its ruling had by the various courts of the State of Georgia up to and including the Supreme Court of Georgia. If unsuccessful there his constitutional questions and federal questions could be made the subject matter of an application for writ of certiorari to the United States Supreme Court, as has been done in many similar cases. See Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949, involving an ordinance which was held invalid, the Georgia courts being reversed; Largent v. State of Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873, holding void an ordinance requiring a license to distribute religious literature; Sperry & Hutchinson Co. v. City of Tacoma, 9 Cir., 190 F. 682, where city ordinance was held invalid by a state court.

In the recent case of Galfas v. City of Atlanta, 5 Cir., 193 F.2d 931, 934, the Court of Appeals of this Circuit affirmed a ruling by this Court which declined to enjoin enforcement of a zoning ordinance of the City of Atlanta upon the ground as urged, that it violated the First Amendment to the United States Constitution, and the Court pointed out "that the only provision for criminal or quasi-criminal sanctions was prosecution of Galfas," the plaintiff in the injunction suit, and therefore, plaintiff had failed to establish his "claim of great and immediate injury". It stated that the "claim of humiliation and disgrace" chargeable against the ordinance was "not sufficient to outweigh the considerations of policy which obtain in a case like the present." The Court held that this Court had no right to pass upon the legality of the ordinance, and stated as follows:

"Implicit in both the 'doctrine of abstention' and the principle of refusal to enjoin criminal prosecutions is the reciprocal requirement that the party and the proceeding to which he is remitted be absolutely unprejudiced by any determination upon the merits by the federal Court." Galfas v. City of Atlanta, supra, 193 F.2d at page 935.

There have been of course, a number of decisions upholding orders of the trial courts which granted injunctions against the acts of city officials who were threatening to violate the federal rights of the plaintiff under guise of void ordinances. However, in most of these cases special circumstances existed which rendered inadequate and insufficient the right of the party seeking injunction to avail himself of his legal rights by attacking the ordinance when prosecuted for its violation. Thus, in Sellers v. Johnson, 8 Cir., 163 F.2d 877, the state officers were violating the rights of the plaintiffs by blocking the highway. There are several exceptions to the general rule, but none of them seem applicable in the instant case.

(2) Petitioners in this case are not entitled to an injunction on account of the provisions of 28 U.S.C.A. § 2283, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The United States Supreme Court gave a quite recent discussion concerning the above statute in the case of Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 75 S.Ct. 452, 454, a case in which a labor union sought to enjoin proceedings in a state court. Referring to the Amendment of Title 28 of the United States Code in 1948 and to the exceptions "to the historic prohibition against federal interference with state judicial proceedings" the Court said: "By that enactment, Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation."

The Court also said: "Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." As to the delay which might ensue by pursuing the state case to a conclusion the Court has this to say: "Thus, so the argument runs, unless the federal court can intervene, delay will not only undercut the legislative scheme, but opportunity for effective union activity may be diminished if not lost. The assumption upon which the argument proceeds is that federal rights will not be adequately protected in the state courts, and the 'gap' complained of is impatience with the appellate process if state courts go wrong. * * * The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts. We cannot assume that this confidence has been misplaced. * * * To permit the federal courts to interfere, as a matter of judicial notions of policy, may add to the number of courts which pass on a controversy before the rightful forum for its settlement is established."

To grant an injunction in the present case would have the practical effect of preventing the Courts of Georgia from passing upon the validity of the ordinance in question, a result not in accord with federal policies. Delay in the state processes is not sufficient ground for federal interference. The desire of plaintiffs to make a speedy end of the whole business by a prompt injunction in the federal courts can be readily appreciated as a practical matter, but speed, unlike justice, is not a commodity which our courts carry in their show windows. However important may be the undisputed rights of the plaintiff to pursue his efforts to organize the employees in various industries without unlawful interference, these rights are not paramount to the now well-established policy of our government to refrain from interfering with the judicial processes of the courts of the individual states.

For reasons set forth above judgment will be entered dismissing the complaint.