**Oscar SUSSMAN, on his own behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**James R. COWAN, Individually and as the State Commissioner of Health of New Jersey and George F. Kugler, Jr., Individually and as the Attorney General of the State of New Jersey, Defendants.**

**Civ. A. No. 1526-73.**

United States District Court,
D. New Jersey.

June 4, 1974.

Smith, Stratton, Wise & Heher by Allen N. Grossman, Princeton, N. J., for plaintiff.

William F. Hyland, Atty. Gen. of N. J. by Jonathan Weiner, Deputy Atty. Gen., Trenton, N. J., for defendants.

## OPINION and ORDER

Before HUNTER, Circuit Judge, and FISHER and BIUNNO, District Judges.

### PER CURIAM.

Plaintiff has moved for summary judgment and defendants have countered with a motion to dismiss the complaint or in the alternative for summary judgment.

Plaintiff, Oscar Sussman, is an employee of the Department of Health of the State of New Jersey with the position of Director of Consumer Health Services. In his complaint Sussman attacks Executive Orders 19 and 20, which were issued by the then Commissioner of Health, James R. Cowan, pursuant to his authority to adopt rules and regulations governing the internal management of the Department of Health, N.J.S.A. 26:1A–15(b), N.J.S.A. 47:1A–2. The gravamen of the complaint is the allegation that defendants' issuance and implementation of Executive Order No. 20,[1] and their application of Executive Order No. 19 in support thereof, violate the plaintiff's federal constitutional rights of free expression.[2] Although Cowan is no longer Commissioner, the Executive Orders are still viable.

The plaintiff's motion for a summary judgment is directed solely to the constitutionality of Executive Order No. 20. It is alleged that this Order is unconstitutional on its face as imposing an invalid prior restraint on free expression. Although the government does not deny

that this regulation constitutes a prior restraint, it is urged upon us that it is only a notice requirement. The defendants contend that Executive Order No. 20 merely requires a Department of Health employee to give the office of the Commissioner of Health notice that he intends to have an interview or grant a press release. We were told at oral argument that the reason for its promulgation was to enable the Commissioner, or his representative, to rebut any statements made by the employee which are deemed to be detrimental to Health Department policy.

■ We reject the defendants' contention that Executive Order No. 20 is merely a notice requirement,[3] and we hold that Executive Order No. 20 is, on its face unconstitutionally overbroad. Of course, this is not to say that a regulation restricting the freedom of speech of Health Department employees could not be valid if properly drafted. *See* Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1969); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Eisner v. Stamford Board of Education, 440 F.2d 803 (2d Cir. 1971). As the United States Supreme Court stated in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1969):

A government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated

---

1. Executive Order No. 20 reads as follows: No member of the State Department of Health may grant interviews or issue press releases without the consent of the office of the Commissioner.

2. Executive Order No. 19 is basically a restatement of the New Jersey Conflict of Interest Law, N.J.S.A. 52:13D–12 et seq. Plaintiff does not challenge the constitutionality of the New Jersey Conflict of Interest Law nor the authority of the Commissioner of Health to promulgate internal rules pursuant to N.J.S.A. 26:1A–15(b) and N.J.S.A. 47:1A–2.

3. On October 9, 1973 Sussman sent a memo to Dr. Cowan requesting permission to take part in news interviews and to speak before a professional organization. On October 17, 1973 the following memo was sent to Sussman from the office of the Commissioner through Dr. Kwalick:

Permission for you to speak before the American Society of Public Administration on October 24, 1973 and the American Public Health Association's 101st Annual Meeting in San Francisco is pending the submission and review of your text.

Submit your text to me immediately and a decision will be forthcoming from the office of the Commissioner through me.

to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.* at 377.[4] However, Executive Order No. 20 gives the Commissioner of Health unbridled authority to issue or withhold his consent to the issuance of a press release or to permit interviews by Health Department employees without reference to a legitimate Health Department policy or regulation. Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L. Ed.2d 162 (1969); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 495 (1938); *See* Pickering v. Board of Education, *supra;* Bantam Books, Inc., v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■ There is generally a presumption in favor of the constitutionality of legislative acts and administrative regulations. However, where the legislative act either on its face or in its specific application restricts rights protected by the First Amendment, the presumption is against, rather than in favor of, its validity. Thomas v. Collins, 323 U.S. 516, 529–531, 65 S.Ct. 315, 89 L.Ed. 430 (1944). See Opinion of Justice Rutledge in United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948). We find nothing in this record to establish constitutionally sufficient grounds justifying the impairment of the right involved. Therefore, plaintiff's motion for summary judgment is granted and defendants' motion to dismiss, or in the alternative for summary judgment, is denied.

BIUNNO, District Judge (dissenting).

Sussman asks the court to decide that Executive Order No. 20 of the N.J. Department of Health is unconstitutional. The order was issued March 20, 1972. Its text is brief:

"SUBJECT: Press Interview and Releases

"No member of the State Department of Health may grant interviews or issue press releases without the consent of the Office of the Commissioner."

Sussman is an employee of the Department of Health, in the capacity of Director, Consumer Health Services. He asserts that the challenged Order is unconstitutional on its face, mainly because of what is said to be its overbroad sweep, in violation of his First Amendment rights. He says that the challenged Order (and another one not involved at this stage) was invoked against him by memorandum of August 15, 1973.

The complaint recites that during 1973, Sussman supervised an effort by health officials to achieve improved compliance with the State Sanitary Code as applied to food establishments whether privately or publicly operated. In the course of this program, it appears, he publicized what seemed to him to be inadequate compliance at publicly operated facilities. He evidently claims the right to publicize what he considers to be inadequate departmental enforcement policy in this area.

The question is raised by a motion for summary judgment. The motion should be denied, without prejudice to what may be the eventual outcome at trial.

4. *O'Brien* is one of a line of cases which might be classified as involving "speech-plus", i. e. a case where "speech" and "non-speech" elements are combined in the same source of conduct. These cases stand for the proposition that a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms, *O'Brien, supra* at 376 (citations omitted).

The instant case is distinguishable from *O'Brien* in that it is concerned with "pure-speech". However, the First and Fourteenth Amendments afford even greater protection to those who communicate ideas by "pure-speech". Cox v. Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Walker v. Birmingham, 388 U.S. 307, 316, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

Sussman would have the court read the challenged Order literally, and rule that it is unconstitutional on its face. But he cannot so confine the question before the court. The court is obliged, by long-standing principle, to search for the meaning of the Order, just as it must search for the meaning of a constitution, a statute, a rule or regulation and an ordinance or resolution. The process is one of construction, and it cannot be carried out in the abstract. To do so would be what Mr. Justice Holmes called "churning the void to make cheese."

At oral argument, for example, the court was told that there are job descriptions for the various positions in the Department of Health and that some of these include the function of preparing and issuing statements, information or releases to the public for the Department and others may not. The text and details of these job descriptions, along with factual context, are not in the record at this time.

So, it may be that one job consists of running off duplicates of departmental releases and distributing them to the press. It is unlikely that the employee who prints the releases and hands them out would be authorized to have anything to do with the content, drafting and phrasing of the releases.

Another may be a laboratory technician who performs tests on blood samples. It would be unlikely to be a function of his job to issue press releases on his own.

Similarly, the public information officer is unlikely to be authorized in his job to perform laboratory tests, or to do the kind of work within Sussman's job description, whatever it may be.

It is conceded that the challenged order is one governing the internal management of the department, N.J.R.S. 26:1A–15(b), and it may also be in execution of the authority to identify which departmental records are not "public records", as authorized by N.J.R.S. 47:1A–2. It may be that the meaning of the challenged order will be influenced by the Conflict of Interest Law, N.J.R.S. 52:13D–1 et seq. and the departmental Code of Ethics adopted pursuant to that law by Executive Order No. 19. And some departmental information may be subject to the statutory privilege against disclosure of official information under N.J.S. 2A:84A–27, which is N.J. Evidence Rule 34. The scope of the statutory privileges is extremely broad in New Jersey, N.J.S. 2A:84A–16(1), N.J. Evidence Rule 2(1).

Beyond that, the court has been furnished no material in regard to the practical construction given to the challenged Order, or to any similar Order, rule, regulation or statute, as an aid to construction. Instead, Sussman says the text is not ambiguous and hence there is nothing to construe. This may mean no more than that, as he reads the text, he sees no patent ambiguity. Even if that be so, the factual context, orders and enactments in pari materia, and the practical construction, may well disclose latent ambiguities. Nothing in the Constitution of the United States says that the First Amendment applies to the States, but it is common knowledge that it has been so construed by the highest court in the land.

The process of construction takes on special importance in the light of claims of conflict with paramount law. In such cases, courts are required to construe the challenged item in a way that will sustain its validity if that is possible. The duty to construe is unavoidable and it is the duty of the parties to provide the court with all pertinent aids to that process.

The order is by State authority. No local construction has been shown. Principles of comity require that the federal courts abstain from the process of construction until the State courts have had an opportunity to do so. American Trial Lawyers Ass'n. etc. v. N. J. Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973).

Defendants, the former head of the Department of Health, and the former

Attorney General, move for dismissal of the complaint. At oral argument, they asked that the court consider the motion as one for summary judgment, if appropriate. However described, the motion must be denied, without prejudice. Among other forms of relief, the complaint asks for a declaratory judgment. That form of relief is achieved when the declaration is made, whether the result is that urged by Sussman or not. Declaratory relief is designed to resolve controversies, one way or the other. There can be no doubt that a genuine controversy exists, and Sussman cannot be said not to be entitled to obtain an answer to it.

At oral argument, it was agreed that so long as declaratory relief is obtained, Sussman has no need for a class action certification or for the extraordinary remedy of injunction. If the declaration is in Sussman's favor, it is expected that defendants will honor and abide by it; if they do not, it will be time enough then to apply for remedies to give effect to the judgment. F.R.Civ.P. 69(a). It follows from this that there is no need for the three-judge court to continue, and it should be dissolved, and the motion for class action certification should be denied.

In these circumstances, a court ought not to attempt a final adjudication on the motions. The materials submitted are inadequate, on both sides, to justify such a course. The preferred action would be to deny both motions, without prejudice, and with leave to any party to apply to the Superior Court of New Jersey to have the challenged order construed. See N.J.S.A. 2A:16–50 to 62. Further proceedings here should be held in abeyance to abide the event, recognizing that the defendant Commissioner may choose to adopt a new or modified order which will itself articulate its scope and the governmental interest to be furthered.

Of course, nothing said here should be taken to imply that the Commissioner could restrict Sussman's right to speak for himself as a private citizen or as a professional in respect to matters not affecting the legitimate interests of government, or his right to make disclosures to officials or agencies having jurisdiction (such as a prosecutor or grand jury) of information indicating misfeasance, malfeasance or nonfeasance in office, so that they may carry out their proper functions.

The main point to keep in mind is that no organization, whether public or private, can be expected to function properly if every employee could generate controversy about matters of policy, without restraint. Nor are the courts either equipped or authorized to supervise and regulate the policy decisions of the Executive Branch. Most policy questions involve the exercise of judgment, which must be left to the official in whom that judgment is placed by law, so long as his resolution of them falls within the broad limits inherent in the process. Most policy decisions require a balancing of competing goals and values, as well as an evaluation of the means and methods by which, and the time scale within which, they seem to be most likely to be achieved.

Every human effort is necessarily imperfect. It is good to reach for the stars, but it is realistic to enjoy the pretty flowers at our feet. And there are achievable goals which cannot be realized immediately; babies must crawl before they can walk. In every social structure, functions and responsibilities must be divided and allocated; every little movement has a meaning of its own. Generals can make decisions that lose battles, but if every foot-soldier were allowed to make the general's decisions for him, the ensuing chaos would guarantee failure.

With due respect, I dissent from the determination of the majority.