## Midlake on Big Boulder Lake Condominium Association v. Cappuccio

*James R. Nanovic,* for plaintiff.
*Ronald J. Cappuccio,* for defendants.

LAVELLE, *J.*, May 15, 1995—This case raises an important constitutional issue involving freedom of speech secured by the First Amendment of the United States Constitution and made applicable to the states through the Fourteenth Amendment.[1]

A property owners' association seeks injunctive relief to prohibit two Kidder Township condominium owners from placing "for sale" signs in their windows in violation of a restrictive land covenant contained in their deed and filed of record. The condominium owners contend that judicial enforcement of this illegal free speech restriction would constitute governmental action infringing on their First Amendment rights under the Constitution. The association asserts that it is not a governmental body and the provisions of the First Amendment as incorporated in the Fourteenth Amendment do not apply. For the reasons set forth herein, we shall refuse to enforce the sign restriction.

## FINDINGS OF FACT

Midlake on Big Boulder Lake Condominium Association is a private group of condominium owners established under the Uniform Condominium Act of the Commonwealth of Pennsylvania, 68 P.S. §3101. It was formed by Northeast Land Company, the developer of the resort community in Kidder Township, Carbon County, Pennsylvania known as Midlake on Big Boulder Lake.

---

1. The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." The Fourteenth Amendment makes this limitation applicable to the states, see *Gitlow v. New York*, 268 U.S. 652 (1925), and to their political subdivisions, see *Lovell v. Griffin*, 303 U.S. 444 (1938).

By deed dated January 9, 1989 defendants, Ronald and Sondra Cappuccio, purchased condominium unit H-242. Cappuccios' deed provides that title to the property was under and subject to certain restrictions contained in a written declaration filed in the office of the Recorder of Deeds of Carbon County.

Section 7.1.5 of the declaration, which is the only restriction pertinent to this case, provides:

"No unit owner (except declarant in connection with its leasing and marketing and sale of units) may erect any sign on or in a unit or in a common element or limited common element which is visible from the outdoors without in each instance having obtained the prior written permission of the executive board."

In the fall of 1989, without permission of the executive board, Cappuccios placed two 8 1/2 by 11 inch signs in the front and side windows of unit H-242 indicating that the unit was for sale by the owners. The two signs were visible outside the unit.

On October 21, 1992 Midlake's executive board sent written notice to Cappuccios directing them to remove the signs from the windows, because the display violated section 7.1.5 of the declaration. Cappuccios refused to remove the signs or permit association's representative access to their unit to remove the signs. On December 18, 1992, Midlake began their suit to enforce the restriction.

In March 1993, after renting their condominium Cappuccios removed the signs. At the time of the hearing, the signs were not being displayed. Cappuccios, however, refuse to confirm that they will not post the signs in their windows at some future time.

## DISCUSSION

The threshold question, which we raised sua sponte, is whether this court should decide the matter. Cappuccios are not posting the contested "for sale" signs in their condominium unit's windows. There is presently no prohibited act under section 7.1.5 to enjoin. At the hearing Mr. Cappuccio, an attorney, expressed his strong feeling that the sign prohibition was unconstitutional and refused to state that he and his wife will not re-post these signs at some future date. There is, therefore, the threat that these signs will appear again and then disappear when a suit begins to remove them.

Pennsylvania case law allows a court to decide an important controversy which might elude judicial scrutiny by legal maneuverings of a litigant. In *Reichley v. North Penn School District,* 113 Pa. Commw. 528, 537 A.2d 391 (1988), the Commonwealth Court remanded for further proceedings an equity suit which attacked the constitutionality of section 1003 of the Public Employee Relations Act of 1970 which permitted teachers to strike even though the teachers had gone back to work saying "where, as here, there is a question of significant dimension that is capable of repetition yet evading review, the mootness doctrine need not bar the action." *Reichley, supra* at 532, 537 A.2d at 393. Although this matter is undeniably moot, we believe that the freedom of speech issue affects the interest of all condominium owners at Midlake and could otherwise repeatedly escape review. Further, both parties are asking this court to decide the matter.

Association contends that Cappuccios violated section 7.1.5 of the declaration by posting visible "for sale" signs in the windows of unit H-242. Cappuccios agree that generally they are bound by their deed cove-

nants. Indeed, the Pennsylvania Supreme Court has held that private associations may impose restrictions which limit or control the use and enjoyment of property in a residential development. *Parker v. Hough,* 420 Pa. 7, 215 A.2d 667 (1966). They submit, however, that the restriction against posting signs on their property is illegal because it violates their right to freedom of speech and is unconstitutional.

The initial question in the instant case is whether Midlake is immunized from alleged freedom of speech violations because it is a private body. It is beyond cavil that the first section of the Fourteenth Amendment applies only to the states, and erects no shield against purely private conduct, however discriminatory or wrongful. Cappuccios argue, however, under the principles enunciated by the United States Supreme Court in *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836 (1948), that if this court should enforce the restriction on "for sale" signs that would constitute state action allowing for the scrutiny of such provisions under the Federal Constitution's Fourteenth Amendment Due Process and Equal Protection clauses.

In *Shelley,* homeowners had executed contracts with clauses restricting the sale of their real estate to Caucasians. When some homes were sold to blacks, the remaining homeowners filed suit to enforce the restrictive covenants. The United States Supreme Court held that, while the Fourteenth Amendment does not reach purely private conduct, judicial enforcement of restrictive covenants constitutes state action triggering the protections of the Fourteenth Amendment's Due Process and Equal Protection clauses. The following language of the court is pertinent to the instant case:

"We have noted that previous decisions of this court have established the proposition the judicial action is

not immunized from the operation of the Fourteenth Amendment simply because it is taken pursuant to the state's common-law policy. Nor is the amendment ineffective simply because the particular pattern of discrimination, which the state has enforced was defined initially by the terms of a private agreement. State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to exertions of state power in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this court to enforce the constitutional commands.

"We hold that in granting judicial enforcement of the restrictive agreements in these cases, the states have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand." *Shelley v. Kraemer, supra,* 334 U.S. at 20.

In our view, if judicial enforcement of a racially restrictive covenant constitutes state action, it logically follows that judicial enforcement of a restriction abridging freedom of speech is also state action. Judicial enforcement of private agreements which violate the First and Fourteenth Amendments cannot be both state action and not state action at the same time. To conclude otherwise violates logic, reason and plain common sense. The rationale in *Shelley* is that equal protection of the law cannot be guaranteed by a state whose judicial arm would deny it.

We, therefore, must determine whether section 7.1.5 of the plaintiff's declaration can pass constitutional muster. A 1977 United States Supreme Court decision tells us it cannot. There is no question now that a prohibition against putting up "for sale" signs on one's property

is content-based discrimination, infringes on the right of free speech and violates the First Amendment of the United States Constitution. In *Linmark Associates Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614 (1977), the Supreme Court struck down as unconstitutional an ordinance that sought to maintain stable, integrated neighborhoods by prohibiting homeowners from placing "for sale" or "sold" signs on their property. Although the court recognized the importance of Willingboro's objective, it held that the First Amendment prevented the township from "achieving its goal by restricting the free flow of truthful information." *Id.* at 95.

In summary, we hold that judicial enforcement of private agreements which infringe on freedom of speech rights constitutes state action and brings such private action within the ken of the Fourteenth Amendment through which the First Amendment guarantee of free speech is made applicable to the states.

Accordingly, we enter the following

### ORDER

And now, May 15, 1995, after non-jury trial and reviewing the briefs of counsel it is hereby ordered and decreed as follows:

(1) Counts I and II of plaintiff's complaint are hereby denied and dismissed.

(2) Defendants' first count of their counterclaim is granted, and plaintiff is enjoined and prohibited from enforcing section 7.1.5 of the declaration.

(3) Defendants' second count of their counterclaim is denied and dismissed because the issues in this case had arguable merit.