The Honorable Tim Emert State Senator, 15th District 3131 Terra Vista Independence, Kansas 67301
Dear Senator Emert:
You request our opinion regarding a policy of the city of Independence that restricts the use of its park for political activities. We review this policy in light of the first amendment to the United States constitution which guarantees the freedom of speech and the press. The city policy regarding its park is as follows:
"A. Use of Facility.
 "It is in the best interest of the general public that the City hereby reserves the right to restrict the use of the Park for events where there is an underlying . . . political advocacy activity.
. . . .
"D. User Permit.
"The Organization shall apply for a permit to use said facilities.
. . . .
"H. Miscellaneous.
. . . .
 "It is the intent of the City Commission that no person or organization shall set up any booth or table for the distribution or sale of any articles, handbills, posters, cards . . . for any activity of [a] . . . political nature."
The right to engage in political activity is a form of political expression protected by the first amendment and is a fundamental right. Buckley v. Valeo, 424 U.S. 1, 416 L.Ed.2d 659,96 S.Ct. 612 (1976). In addition, parks are so historically associated with the exercise of first amendment rights that access to them for the purpose of exercising those rights cannot be denied.Grayned v. City of Rockford, 408 U.S. 104, 33 L.Ed.2d 222,92 S.Ct. 2294 (1972).
In Niemotko v. Maryland, 340 U.S. 268, 95 L.Ed. 267, 71 S.Ct. 325
(1951), two members of Jehovah Witnesses were arrested for using the city park to conduct "Bible talks" after their request for a permit was denied. There was no ordinance regulating the use of the park, but rather a "practice" of requesting permission from the mayor before the date of the activity. The United States Supreme Court reversed the convictions for disorderly conduct because there were no content-neutral standards governing the distribution of permits.
 "This Court has many times examined the licensing systems by which local bodies regulate the use of their parks and public places. (Citations omitted). In those cases this Court condemned statutes and ordinances which required that permits be obtained from local officials as a prerequisite to the use of public places, on the grounds that a license requirement constituted a prior restraint on freedom of speech, press and religion, and, in the absence of narrowly drawn, reasonable and definite standards for the officials to follow, must be invalid." Niemotko,
95 L.Ed. at 270.
The city's policy reserves the right to "restrict the use of the park for events where there is an underlying . . . political advocacy activity." It is unclear whether, in application, the city commission would refuse a permit for all political advocacy activities or pick and choose among the political advocacy activities that the commission approves. In either event, it is our opinion that the policy offends the first amendment to the United States constitution because it places an unconstitutional prior restraint by giving the commission unfettered discretion to grant or deny a permit without narrow objective and definite standards. [See Shuttlesworth v. Alabama, 394 U.S. 147,22 L.Ed.2d 162, 89 S.Ct. 935 (1969) (ordinance held facially invalid because city official was authorized to deny a parade permit on the basis that the parade would be injurious to the "public welfare, peace, safety, or public convenience"); Lakewood v.Plain Dealer, 486 U.S. 750, 100 L.Ed.2d 771, 108 S.Ct. 2138
(1988) (ordinance giving mayor authority to grant or deny permit to set up news racks on city sidewalks was unconstitutional on its face, no explicit limits on mayor's authority).]
Another problem with the policy is that the city's exclusion of all political activity is a content-based exclusion and therefore, to withstand the strict scrutiny of the first amendment, the city must prove that the restriction is necessary to serve a compelling governmental interest and is narrowly drawn to achieve that interest. Perry Ed. Assn. v. Perry Local Educators' Assn.,460 U.S. 37, 103 S.Ct., 948, 955, 74 L.Ed.2d 794 (1983).
The city may establish reasonable time, place and manner restrictions on the use of the park if such restrictions are necessary to further significant governmental interests. PoliceDepartment of Chicago v. Mosely, 408 U.S. 92, 33 L.Ed.2d 212,92 S.Ct. 2286 (1972).
 "Even in a public forum the government may impose reasonable restrictions on the time, place or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 105 L.Ed.2d 661, 675, 109 S.Ct. 2746 (1989).
However, the Independence regulation is not content-neutral and, therefore, will be subject to the compelling governmental interest test described in the Perry case.
Finally, the city's prohibition against the distribution of "articles, handbills, posters and cards" violates bothfirst amendment tenets protecting speech and press. [See Lovell v.Griffin, 303 U.S. 444, 82 L.Ed. 949, 58 S.Ct. 666 (1938) (a municipality cannot bar the distribution of literature containing religious or political ideas in public places); Lee v.International Society for Krishna Consciousness, 505 U.S. ___,120 L.Ed.2d 669, 112 S.Ct. 2709 (1992) (ban on distribution of literature in airport terminals violates first amendment); Marshv. Alabama, 326 U.S. 501, 90 L.Ed. 265, 66 S.Ct. 276 (1946), (trespass conviction reversed where person distributed handbills in company-owned town).]
In Schneider v. New Jersey, 308 U.S. 147, 84 L.Ed. 155,60 S.Ct. 146 (1939) the court held that an ordinance prohibiting the distribution of handbills on city streets violated thefirst amendment. While the opinion addressed the use of streets, its rationale is also applicable to public parks.
 "Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the constitution to those who wish to speak, write, print or circulate information or opinion.
 "Municipal authorities, as trustees for the public, have the duty to keep their community's streets open and available for movement for people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets." Schneider, 84 L.Ed. at 164.
Summarizing our opinion, a city may not prohibit the use of its park for political advocacy activities or prohibit the distribution of handbills, pamphlets, posters or any other literature of a political nature as such restrictions violate thefirst amendment to the United States constitution because the prohibition constitutes a prior restraint on communication without narrow objective and definite standards. Furthermore, the exclusion of all political activity in a city park is a content-based exclusion which requires the city to establish that the exclusion is necessary to serve a compelling governmental interest and is narrowly drawn to achieve that interest. Finally, a city may impose reasonable restrictions on the time, place or manner of protected speech provided the restrictions are justified without reference to their content, are narrowly tailored to serve a significant city interest and leave open ample alternative channels for communication of information.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm