Dear Senator Dupre:
Your request for an Attorney General opinion has been forwarded to me for research and reply. Specifically, you ask:
 Does a municipality have the authority to prohibit a company from delivering unsolicited newspapers, phone books or other printed material to citizens of the municipality or does the company have the right to throw these unsolicited materials onto private property without the owner's permission?
Your question was answered in the Louisiana Supreme Court decision ofCity of Bogalusa v. May, 212 So. 2d 408 (La. 1968). The Louisiana Supreme Court addressed whether an ordinance violated the First Amendment to the Constitution of the United States and whether it violated Article 1, Section 3 of the Louisiana Constitution of 1921. These provisions are reproduced below as is Article 1, Section 7 of the Louisiana Constitution of 1974 which essentially has the same meaning as its 1921 precursor.
 AMENDMENTS TO CONSTITUTION OF THE UNITED STATES AMENDMENT 1 *Page 2 Freedom of religion, speech and press; peacefulassemblage; petition of grievances Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the
 freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
 LOUISIANA CONSTITUTION OF 1921 ARTICLE I § 3. Liberty of speech and press; responsibility forabuse Section 3. No law shall ever be passed to curtail or restrain the liberty of speech or of the press; any person may speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.
 LOUISIANA CONSTITUTION OF 1974 ARTICLE I § 7. Freedom of Expression
 Section 7. No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
In the City of Bogalusa. the court affirmed the City Court of Bogalusa's ruling which held a city ordinance unconstitutional. The ordinance required identification of the distributor of all circulars and pamphlets distributed in the city. The Louisiana Supreme Court quoted the trial judge in the city court ruling as follows:
 The freedom of speech and of the press, as granted by the First Amendment to the Constitution of the United States, forms a part of the foundation of the government of this country. It sanctions the right of free men in a free land to think, to speak, to write, to publicize and to circulate their ideas and information freely, without *Page 3 
censorship and without restraint. It assumes the wide exchange of free and unrestrained thought is essential for the total information of all people in the land and to the public welfare, and that it is essential to keeping those charged to the voice and the will of the people. It abhors the possibility of those exercising governmental authority of so regulating or restraining speech and the press that the thought, the spoken word no longer be a reflection of the individual but of the governmental authority. It encourages diversity of thought. It even tolerates dissident views and antagonistic ideas. One of the strongest bulwarks of liberty, this concept of freedom of speech and of the press is a characteristic that has set the United States apart.
The court in affirming the City of Bogalusa ruling pointed out that the ordinance in question was strikingly similar to an ordinance adopted by the City of Los Angeles, which the United States Supreme Court held to be unconstitutional in Talley v. State of California, 362 U.S. 60,80 S. Ct. 536, 4 L. Ed. 2d 559, on the ground it was so sweeping it stifled fundamental personal liberties. The Louisiana Supreme Court quoted the following from the Talley case:
 The broad ordinance now before us, barring distribution of `any hand-bill in any place under any circumstances,' falls precisely under the ban of our prior cases unless this ordinance is saved by the qualification that handbills ban be distributed if they have printed on them the names and addresses of the persons who prepared, distributed or sponsored them. For, as in Griffin, the ordinance here is not limited to handbills whose content is `obscene or offensive to public morals or that advocates unlawful conduct.' Counsel has urged that this ordinance is aimed at providing a way to identify those responsible for fraud, false advertising and libel. Yet the ordinance is in no manner so limited, nor have we been referred to any legislative history indicating such a purpose. Therefore we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils. This ordinance simply bars all handbills under all circumstances anywhere that do not have the names and addresses printed on them in the place the ordinance requires. (The emphasis was added by the Louisiana Supreme Court).
 There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression. `Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the *Page 4 
publication would be of little value.' Lovell v. City of Griffin, 303 U.S. [444], at page 452, 58 S.Ct. [666], at page 669 [82 L.Ed. 949].
While some might argue that this proposed ordinance deals with littering and not freedom of speech or freedom of the press, Louisiana Revised Statute 30:2522(4) specifically excludes these printed materials from the definition of littering:
§ 2522. Definitions
As used in this Part, the following words have the meanings ascribed to them unless the context requires otherwise:
 (4) "Litter" means all waste material except as provided and defined in R.S. 30:2173(2), including but not limited to disposable packages, containers, sand, gravel, rubbish, cans, bottles, refuse, garbage, trash, debris, dead animals, furniture or appliances, automotive parts including but not limited to tires and engines, trailers, boars and boating accessories, tools and equipment, and building materials, roofing nails, or other discarded materials of any kind and description. While being used for or distributed in accordance with their intended uses, litter shall not include political pamphlets, handbills, religious tracts and newspapers, and other similar printed materials, the unsolicited distribution of which is protected by the Constitution of the United States or the Constitution of Louisiana. Litter shall not include agricultural products that are being transported from the harvest or collection site to a processing or market site if reasonable measures are taken to prevent the agricultural product from leaving the transporting vehicle. Litter shall also not include recyclable cardboard being transported in compressed bundles to processing facilities. "Agricultural product" as used in this definition means all crops, livestock, poultry, and forestry, and all aquacultural, floracultural, horticultural, silvicultural, and viticultural products. (Emphasis added).
According to the statute above, newspapers and other printed materials, even when they are unsolicited, are excluded from the definition of litter and the unsolicited distribution of these materials is protected by the First Amendment of the Constitution of the United States and by Article 1. Section 7 of the Louisiana Constitution of 1974 Therefore, it is the opinion of this office that the Town of Lockport does not have the authority to prohibit a company from delivering *Page 5 
unsolicited newspapers, telephone books or other printed material onto private property and the distribution of these materials is constitutionally protected.
We trust we have answered your questions. However, if you should need anything further do not hesitate to contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: _________________________ FRANCES J. PITMAN ASSISTANT ATTORNEY GENERAL
 CCF, Jr:FJP:sc