Michael MARCAVAGE, Appellant

v.

CITY OF PHILADELPHIA, PENNSYL-
VANIA; Warren Edwards, Sergeant,
Individually, and in his Official Ca-
pacity as a Philadelphia Police Offi-
cer; Officer John Doe, Individually,
and in his Official Capacity as a Phil-
adelphia Police Officer; Officer Jane
Doe, Individually, and in her Official
Capacity as a Philadelphia Police Of-
ficer; William V. Fisher, in his Offi-
cial and Individual Capacity; Officer
Daniel Kelly, Individually and in his
Capacity as a Philadelphia Police Of-
ficer; James Tiano, in his Official and
Individual Capacity.

No. 07–1049.

United States Court of Appeals,
Third Circuit.

Argued: Feb. 5, 2008.

Filed: April 1, 2008.

Ambro, Circuit Judge, filed concurring
opinion.

C. Scott Shields, Esq. (Argued), Lloyd
T. Hoppe, Jr., Esq., Shields & Hoppe,
Media, PA, Attorney for Appellant.

Jane L. Istvan, Esq. (Argued), City of
Philadelphia, Law Department, Philadel-
phia, PA, Attorney for Appellees.

Before: McKEE, AMBRO, Circuit
Judges, IRENAS, Senior District Judge.*

OPINION

McKEE, Circuit Judge.

Michael Marcavage appeals judgments
in favor of the City of Philadelphia and
certain of its agents in the suit he filed
pursuant to 42 U.S.C. § 1983 alleging vio-
lations of his First Amendment liberties.

* Honorable Joseph F. Irenas, Senior United
States District Judge for the District of New
Jersey, sitting by designation.

He argues the district court erred in granting certain defendants judgment as a matter of law, and also erred in instructing the jury. Because we agree that the court erred in instructing the jury, we will remand for a new trial on those claims that resulted in a jury verdict against Marcavage.

Inasmuch as we write only for the parties who are familiar with this case, we need not recite the procedural or factual background of this dispute in detail.

At trial, Marcavage requested a number of jury instructions on the limitations the First Amendment imposes on a government's ability to restrict speech. The court refused to give the precise instructions Marcavage requested. Rather, in pertinent part, the court instructed the jury as follows:

> The First Amendment protects speech and other expressive activity in public spaces-all of the activities at issue in this have taken place in public fora. However, the protections afforded by the First Amendment are not absolute. Principles of religious tolerance do not relieve an individual from complying with the laws of general applicability, so the right of free exercise does not relieve an individual of the right to comply with a valid and neutral law of general applicability. Even though First Amendment rights are to be guarded, they may still be regulated by the state. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.

> \*   \*   \*

The Plaintiff claims that the restrictions on his activity were content-based. Discrimination against speech because of its message is [sic] may be deemed unconstitutional. A restriction on speech is content-based when it is based on the message of the speaker or the dislikes of an audience. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. If you find, by a preponderance of the evidence, that any of the Defendants (1) acted to restrict Mr. Marcavage's free speech activities because of the content of his message or his viewpoint; and (2) that they did not have a compelling reason for doing so, and (3) that the restriction was not narrowly drawn to achieve that end, then you must find Defendants' liable to Plaintiff for violating his constitutionally protected rights.

The Defendants in this case claim that any restrictions on Plaintiff's activity were restrictions on the time, place, and manner of that activity. I instruct you that the government may impose reasonable time, place, and manner restrictions on First Amendment activity to further significant governmental interests. If you find that the Defendants' actions were (1) restrictions on the time, place, and manner of Plaintiff's activity; (2) the restrictions were designed to further a significant governmental interests, and (3) that those restrictions were reasonable, then you must rule for the Defendants and against the Plaintiff.

The court provided counsel with these instructions immediately before charging the jury and informed the parties that they could only make objections to the written charge after it was given to the jury.[1]

---

1. Although neither party objects to this procedure on appeal, we note that Fed.R.Civ.P. 51(b)(2) states that the court "must give the parties an opportunity to object ... to the proposed instructions ... before the instructions ... are delivered."

## I.

We review the district court's refusal to give a specific charge for abuse of discretion. Our review of the jury charge that was given is plenary insofar as we are determining whether the charge as a whole misstated relevant law. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 929–932 (3d Cir.1997). Viewing the charge that was given as a whole, we conclude that the court made two errors that require reversal and remand.

### A. Time, Place, and Manner Restrictions

The scope of a governmental entity's ability to impose reasonable time, place, and manner restrictions is set forth in *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). There, the Supreme Court held that such restrictions must be: (1) justified without reference to the content of the regulated speech; (2) narrowly tailored to serve significant governmental interests, and (3) must leave open alternative channels for communications. *See also Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

Here, the district court instructed the jury that they could return a verdict for the City if the challenged actions were: (1) restrictions on the time, place, and manner of Plaintiff's activity, (2) the restrictions were designed to further a significant governmental interests, and (3) the restrictions were reasonable. Joint Appendix II,

at 532. The court did not inform the jury of the government's obligation to allow alternative channels of communications. In addition, the jury was not told that a time, place, and manner restriction must be both content-neutral and narrowly tailored.

We realize that the court did inform the jury that any regulation had to be content-neutral in another part of the charge.[2] That instruction does mitigate the court's failure to instruct that time, place, and manner restrictions must be content-neutral, and must satisfy a compelling government interest. We note, however, that even this instruction was incorrect. In fashioning the charge, the court placed the burden on Marcavage to prove that the Defendants' restrictions were content-based. *See* Joint Appendix, at 531 (instructing the jury (in part) that "If you find, by a preponderance of the evidence, that any of the Defendants acted to restrict Mr. Marcavage's free speech activities because of the content of his message or his viewpoint ...," it must find Defendants' liable.) This belies the Supreme Court's oft-repeated pronouncement that "when the government restricts speech, the government bears the burden of proving the constitutionality of its actions." *See U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (citing *Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 183, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999); *Board of Trustees of State Univ. of N.Y. v. Fox*, 492

---

2. There the court instructed:

A restriction on speech is content-based when it is based on the message of the speaker or the dislikes of an audience. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. If you find, by a preponderance of the evidence, that any of the Defendants

(1) acted to restrict Mr. Marcavage's free speech activities because of the content of his message or his viewpoint, and (2) that they did not have a compelling reason for doing so, and (3) that the restrictions was not narrowly drawn to achieve that end, then you must find Defendants' liable to Plaintiff for violating his constitutionally protected rights.

U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)).

Moreover, the court's failure to instruct on the obligation to provide an alternative channel for the speech was never corrected nor mitigated. That omission prevented the jury from determining whether the reasonable restrictions that were imposed allowed an alternate channel for Marcavage's speech. The error is significant because Marcavage contends that the police and city defendants required him to move to locations and that did not allow him an adequate opportunity to have his message reach his target audience, and that he was not able to adequately continue communicating his message. These are questions of fact that must be resolved.

Appellees argue that the charge's requirement that the restrictions be "reasonable" subsumed a finding that the charge left open an alternative channel of communication. We disagree. In *Pouillon v. City of Owosso*, 206 F.3d 711, 717–718 (6th Cir.2000), the court explained that the reasonableness of time, place, and manner restrictions is a question of law comprised of the three individual determinations set forth in the *Ward* test. The sufficiency of any alternate channels for communications is a component that must be submitted to the jury. *Id.* (explaining that the question of whether the restriction "left open ample alternative channels of communication . . . also should have gone to the jury."). Absent that initial factual inquiry, the jury is not competent to render a decision on whether a time, place, manner restriction is "reasonable."

### B. The Instructions Lacked the Requisite Balance.

We are also concerned that the instructions were not appropriately balanced. The charge provides extensive instructions about the City's need to regulate Marcavage's activities and its interest in doing so. For instance, the court instructed the jury that First Amendment rights are not absolute, and that the city has an interest in maintaining the order, peace, and public safety, and even told the jury that without regulation, "liberty itself [may] be lost in the excesses of anarchy." Joint Appendix, at 529. Those statements in isolation are undeniably true.

However, the court offered only minimal instructions about the importance of safeguarding the fundamental liberties embodied in the First Amendment. We can not help but be concerned that, on balance, the jury could have concluded that the City's right was paramount even absent a compelling state interest showing the least restrictive means of furthering a compelling state interest.

This does not mean that we disagree with the court's statement that it did not have to inform the jury of every nuance of First Amendment jurisprudence. It certainly did not have to do so. However, it did have to provide an appropriately balanced instruction to allow the jury to properly resolve the factual issues underlying Marcavage's legal claims. Taken as a whole, we do not believe that the jury was informed that an individual such as Marcavage has First Amendment interests that are as significant as the state's interest in regulation. For example, the jury was not instructed that he has a constitutionally protected right to hand out leaflet, display his signs, and communicate to listeners. *See Hill v. Colorado*, 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). The only instruction in this regard was that the "First Amendment protects speech and expressive activity in public spaces—and that the speech in this case occurred in public fora." Joint Appendix, at 529. However, even that instruction is modified by the

next sentence informing the jury that First Amendment rights are not absolute.

Thus, the instructions as a whole highlighted the state interest in preserving public peace and order, while diminishing Marcavage's interest in expression and speech. This is exemplified by the court's summary informing the jurors that the government may regulate speech, or else "liberty itself would be lost in the excesses of anarchy." Joint Appendix II, at 529.

## II.

Accordingly, we must vacate the judgment in favor of the Appellees based on the jury's verdict and remand for a new trial consistent with this opinion.[3]

AMBRO, Circuit Judge, concurring.

I reluctantly concur in my colleagues' outcome (overturning the jury verdict in favor of several Philadelphia police officers on Marcavage's First Amendment claims). There seems little more the police could have done to accommodate Mr. Marcavage's desire to assert in public forums his point-of-view. While there are, as Judge McKee well notes, shortcomings with the jury instructions, my initial thought was that they were harmless. The problem is that errors in jury instructions should only be ignored "if a motion for a directed verdict should have been granted, or if the erroneous instruction went to an issue that is immaterial in the light of the jury's verdict, or if it otherwise is apparent that the error could not have changed the result." 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2886 (2d ed.1995) (footnotes omitted). I cannot say with certainty that this case fits into one of the above categories, and thus I recede from a dissent with the dismaying suspicion that we are remanding for retrial a case whose outcome will remain the same.

---

**3.** We do not believe the remainder of Marcavage's claims of error have merit, and we