The COUNCIL OF GREENBURGH CIVIC ASSOCIATIONS and the Saw Mill Civic Association, Plaintiffs,

v.

The UNITED STATES POSTAL SERVICE, Defendant.

No. 77 Civ. 483 (WCC).

United States District Court, S. D. New York.

March 29, 1978.

Jon H. Hammer, New York City, for plaintiffs.

Alfred A. DelliBovi, Richmond Hill, New York, for amicus curiae.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; Mary C. Daly, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

This action, brought by two Westchester County community organizations, challenges the constitutionality of Section 1725 of Title 18, United States Code, and regulations issued thereunder as applied to plaintiffs and "all other similarly situated," [1] on

---

1. Despite this suggestion that plaintiffs sue in a representative capacity, they have made no motion for class certification; the issues herein are therefore decided only with respect to the named plaintiffs.

First Amendment grounds. Section 1725 prohibits deposit of "any mailable matter" in letter boxes without postage. The plaintiff organizations admit that they have violated § 1725 by hand-delivering non-postaged newsletters, brochures and notices regarding various community activities and placing them in the mailboxes of their constituents. In June 1976, plaintiff Saw Mill Civic Association was advised by the Westchester Postmaster that this practice was unlawful, and that further violations would be prosecuted. In response to an inquiry from plaintiffs' counsel, the Postal Service's Office of General Counsel ruled that the Postmaster had properly applied the statute.

Plaintiffs seek declaratory and injunctive relief, claiming that the enforcement of § 1725 against their distribution of noncommercial literature, which is designed to inform and educate the public, has a "pervasive chilling effect" on the exercise of their First Amendment rights and the rights of those who receive the information they distribute. Plaintiffs maintain that in view of the cost of mailing and delays inherent in the use of the Postal Service, hand delivery of non-postaged material is the only practical and economically feasible means by which they can communicate with the public, and that the continued enforcement of the statute will operate as a prior restraint on speech by effectively preventing distribution of such literature.

**2.** The applicable regulations are contained in the Postal Service Manual, incorporated by reference in 39 C.F.R. § 111.1. They provide in relevant part:

"Whoever knowingly and willfully deposits any mailable matter such as statements of account, circulars, sale bills, or other like matter, on which no postage has been paid, in any letterbox established, approved, or accepted by the Postmaster General for the receipt or delivery of mail matter on any route with intent to avoid payment of lawful postage thereon, shall for each such offense be fined not more than $300." Postal Service Manual Part 146.21

"Except as permitted in 156.58, any mailable matter not bearing postage found in, or upon, or attached to, or supported by, or hung from, the private mail receptacles described in 151.-11, is subject to the payment of same postage as would be paid if carried by mail . . . ." Postal Service Manual Part 146.221

Presently before the Court are plaintiffs' motion for summary judgment and defendant's motion to dismiss for failure to state a claim upon which relief may be granted.

The statute in question provides:

"*Postage unpaid on deposited mail matter*

"Whoever knowingly and willfully deposits any mailable matter such as statements of accounts, circulars, sale bills, or other like matter, on which no postage has been paid, in any letter box established, approved, or accepted by the Postal Service for the receipt or delivery of mail matter on any mail route with intent to avoid payment of lawful postage thereon, shall for each such offense be fined not more than $300."

18 U.S.C.A. § 1725 (Pocket Part 1977) [2]

Plaintiffs contend that the statute does not apply to non-commercial matter. They argue that terms such as "statements of account," and "sale bills," clearly refer to commercial matter, and the legislative history reveals an exclusive concern with

"[b]usiness concerns, particularly utility companies, [that] have within the last few years adopted the practice of having their circulars, statements of account, etc., delivered by private messenger, and have used as receptacles the letter boxes erected for the purpose of holding mail

"Every letterbox or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route, star route, or other mail route is designated an authorized depository for mail within the meaning of 18 U.S.C. sections 1702, 1705, 1708 and 1725 . . . ." Postal Service Manual Part 151.11.

"Except as provided in 156.58, the receptacles described in 151.11 shall be used exclusively for matter which bears postage. This applies to items or matter placed upon, supported by, attached to, hung from, or inserted into, a mail receptacle. Any mailable matter not bearing postage and found as described above is subject to the same postage as would be paid if it were carried by mail . . . ." Postal Service Manual Part 151.12.

matter and approved by the Post Office Department for such purpose. This practice is depriving the Post Office Department of considerable revenue on matter which would otherwise go through the mails and at the same time is resulting in the stuffing of letter boxes with extraneous matter."

H.R.Rep. No. 709, 73d Cong., 2d Sess. 1 (1934).

There is, however, evidence that the Post Office Department, which proposed the legislation, and its Congressional sponsors, intended the statute to apply to noncommercial circulars, such as the community notices distributed by plaintiffs. For example, a proposed amendment that would have inserted the word "commercial" into the statute was rejected in the House debates on the bill. In discussing H.R. 9262—a virtually identical predecessor of the bill eventually passed—the following colloquy took place:

Mr. BLANTON. Mr. Speaker, I ask recognition on the amendment. I am wondering if the gentleman from New York [Mr. Mead], who is chairman of the committee, would be willing to permit an amendment so as to add the word "commercial" before the word "circular," so that it would apply only to commercial circulars. There are some circulars that it is to the interest of the patrons of the Post Office to receive, which are matters of interest in a local community. For instance, there are thousands of communities where notices out in the country to the effect that a church sociable is going to be held or that there is to be singing on Sunday afternoon are put in the mail boxes. This ought not to apply to things of that kind, and it ought to be limited to commercial circulars.

Mr. MEAD. If the gentleman will yield for a moment, permit me to say it is now contrary to law to deposit such circulars as the gentleman has in mind in letter boxes on a rural route.

Mr. BLANTON. That is exactly what I am complaining about, and I am hoping the gentleman from New York in his great experience and wisdom would see fit to stop it from being a violation of the law, because it is to the interest of all the owners of these boxes to receive these little community notices. Of course it is done in spite of the law, but it ought not to be a violation. They ought to have the right to put a little community notice in the box, and if the gentleman would limit this to commercial circulars he would carry out the purpose of the committee and the purpose of the Post Office Department, and still give these people the right to use their mail boxes for little notices that benefit the entire community.

Mr. MEAD. The gentleman will see that the effort being made by the committee is in another direction altogether. We are not in this bill concerned with the law that applies to mail boxes on rural routes. We are trying to apply the law that now applies to rural mail boxes apply to city letter boxes.

Mr. BLANTON. What time is a better time than right now to rectify this little injustice to the rural people? Is there any better time than now? I take it that the gentleman has never lived in a rural community.

Mr. MEAD. That is where I live some of the time.

Mr. BLANTON. Then he realizes the problems that beset the rural people. Some of them get their mail only twice a week, people who live away off in the mountains, and it is unfair to say to them that when they have a notice of high importance to the community, it can not be placed in the boxes. Suppose they were getting up a dance for the young people in the community. That is the only way they have to get word about it. They run around the circuit and put the notices in the boxes. Every time they do it they violate the law, but they do it just the same. We ought to stop it from being a violation of the law.

Mr. MEAD. At such time when the committee takes up the matter of revising the law as it applies to rural mail boxes, I shall be glad to consider the

gentleman's amendment, but we are considering now only the application of the law to city mail boxes, and that is the only idea conveyed in the bill.

Mr. BLANTON. Does not the gentleman realize that such an amendment is a good one?

Mr. MEAD. Except that it would in my judgment conflict with the purpose of this bill which applies only to city mail boxes.

75 Cong.Rec. 5576 (1932).

In addition, a press release issued at the time the Postmaster General signed an order amending the Postal Regulations in terms similar to those of the statute, specifically mentions "political handouts" as well as "statements of account" and "advertising circulars," and notes the general problem created by all non-postaged material— that "in many instances letter carriers have found it difficult to deposit mail in the overcrowded letter boxes, and in the larger cities this has worked considerable hardship on the carrier with a resultant loss of time." These contemporaneous records indicate that, although non-commercial matter was not the primary focus of Post Office Department or Congressional concern at the time the statute was enacted, it was intended to be within the scope of the statutory prohibition.

Plaintiffs argue, however, that if the statute is held to proscribe the deposit of non-commercial matter in mail boxes, it constitutes an impermissible abridgment of plaintiffs' First Amendment and related Constitutional rights.[3]

There can be no question that the right of freedom of speech and press embraces the right to distribute literature, *Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938), and that door-to-door distribution is one of the most important and effective methods of disseminating ideas and preserving the tradition of free discussion. *Schneider v. State,* 308 U.S.

147, 164, 60 S.Ct. 146, 84 L.Ed. 155 (1938). As the Supreme Court noted in *Martin v. Struthers:*

"Many of our most widely established religious organizations have used this method of disseminating their doctrines, and laboring groups have used it in recruiting their members. The federal government, in its current war bond selling campaign, encourages groups of citizens to distribute advertisements and circulars from house to house. Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people."

319 U.S. 141, 145–46, [63 S.Ct. 862, 865, 87 L.Ed. 1313] (1942) (footnotes omitted).

The right to distribute information in this manner has been upheld against broad permit requirements, *Lovell v. Griffin, supra, Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1941); prohibitions designed to curb litter, *Schneider v. State, supra;* a prohibition on knocking or ringing a doorbell to summon the occupant, *Martin v. Struthers, supra* ; and a license tax on solicitation, *Murdoch v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

It is equally well-established, however, that First Amendment rights are not absolute, and that their exercise may be subjected to reasonable limitations "necessary to further significant government interests." *Grayned v. City of Rockford,* 408 U.S. 104, 115 [92 S.Ct. 2294, 2303, 33 L.Ed.2d 222] (1972). The Constitution does not guarantee unqualified access to the streets or the doorsteps of individual homes. For example, a prohibition on door-to-door solicitation without the prior consent of the owner was upheld in *Breard v. Alexandria,* 341

---

**3.** Plaintiffs do not challenge enforcement of the statute with respect to commercial matter. See *Rockville Reminder, Inc. v. United States Postal Service,* 480 F.2d 4 (2d Cir. 1973); *B &*

*M Ltd. v. Smith,* 351 F.Supp. 1057 (N.D.Ohio 1972). See also *Bigelow v. Virginia,* 421 U.S. 809, 825 n. 10, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), and the Supreme Court has repeatedly stated that a canvasser may be required to furnish identification or to conform to other requirements reasonably related to the state's interest in preventing fraud, other crimes, or unwarranted inconvenience to residents. See, *e. g., Martin v. Struthers, supra,* 319 U.S. at 148, 63 S.Ct. 862; *Cantwell v. Connecticut, supra,* 310 U.S. at 306, 60 S.Ct. 900.

In evaluating plaintiffs' claim, therefore, the Court must weigh the substantiality of the reasons advanced in support of the statute against the burden imposed on protected speech. Here the Government has asserted interests that are unquestionably legitimate, and significant. Unhampered access to a mailbox is clearly necessary to the efficient delivery of the mail. In addition, the Government argues that the statute will help to prevent postal theft by assuring that the use of a mailbox by anyone other than an authorized letter carrier will arouse suspicion.

The task of balancing government interests against First Amendment rights is always difficult, and would perhaps be especially so here if the challenged statute imposed broad restraints on communication, comparable to those held invalid in *Martin v. Struthers* or *Schneider v. State.* In contrast to the regulations attacked in those cases, however, the statute at issue in this case is "narrowly tailored to further the [Government's] legitimate interest," *Grayned v. City of Rockford, supra,* 408 U.S. at 116–117, 92 S.Ct. at 2303, and in fact imposes only a minimal burden on plaintiffs' activities.

The statute itself does not purport to *prohibit* door-to-door distribution of plaintiffs' community notices. Despite the asserted interest in protecting postal revenue, neither § 1725 nor any other statute or postal regulation requires the distribution of such non-commercial material through the mail. Nor does the Postal Service seek to prohibit deposit of plaintiffs' literature outside the mailbox. Thus plaintiffs are free to leave community messages on doorknobs, behind screen doors, and in similar locations. The existence of this alternative seriously undermines plaintiffs' claim that enforcement of the statute effectively prohibits their activity by imposing postage costs that volunteer community organizations cannot afford.

Plaintiffs claim—perhaps correctly—that messages left outside the mailbox are less likely to reach their intended audience. But the Constitution does not guarantee plaintiffs an absolute right to the most efficient or effective means of communication. A reasonable limitation on the exercise of First Amendment rights in furtherance of a legitimate and significant government interest may be permissible even if it forces individuals to use alternative means of communication that are somewhat more costly or less convenient. See, *e. g., Kovacs v. Cooper,* 336 U.S. 77, 88–89, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

The Court therefore finds that § 1725 as applied to the distribution of non-commercial literature does not constitute an unwarranted denial or abridgment of plaintiffs' constitutional rights.[4] Defendant's motion is therefore granted and the complaint is dismissed.

SO ORDERED.

---

4. The Court rejects plaintiffs' argument, raised for the first time in its reply brief, that the direct deposit of non-postaged mail in letter boxes by civic organizations is protected from regulation under § 1725 by the operation of 18 U.S.C. §§ 1694 and 1696(c). These statutes proscribe distinct activities, and the extension of the exception contained in § 1696(c) to § 1725 would contravene the purposes of § 1725 described above.