**Harlan L. JACOBSEN d/b/a Solo RFD and Single Scene, Plaintiffs,**

v.

**Grace PETERSEN, Mayor of the City of Pierre, South Dakota in that Capacity and as an individual, and The City of Pierre, South Dakota, A Municipality, Defendants.**

Civ. No. 86–3030.

United States District Court, D. South Dakota, C.D.

Jan. 19, 1990.

Harlan L. Jacobsen, Sioux Falls, S.D., pro se.

Charles M. Thompson, May, Adam, Gerdes & Thompson, and E.D. Mayer, Riter, Mayer, Hofer & Riter, Pierre, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

On July 2, 1986, plaintiff Harlan Jacobsen (Jacobsen) filed the present action, contending that his First Amendment rights were violated by application of a constitutionally invalid ordinance to his newspaper vending machine, and that the defendants, the mayor of Pierre and the city of Pierre, violated his constitutional right to due process of law by removing his newsrack from a Pierre sidewalk. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(3)[1]. A court trial of this case was held on November 21, 1988. This memorandum opinion represents the Court's ruling.

## FACTS

Jacobsen is the sole proprietor and publisher of *Solo RFD* and *Single Scene* newspapers, directed at the market of unmarried persons. In October of 1985, he installed a coin-operated newspaper vending machine (newsrack) on the east side of Pierre street in front of the federal building in Pierre, South Dakota without any permission from the city of Pierre. This newsrack remained in place, chained to a light pole, for eight months until May 29, 1986, when Jacobsen decided to replace it with a second newsrack and to locate the second rack closer to the corner of Pierre street and Sioux avenue. [He apparently moved the newsrack a distance of about fifty feet.] On June 11, 1986, the Pierre Public Works Department removed Jacobsen's newsrack without notifying him, allegedly because it was a hazard to both pedestrian and vehicular traffic at the intersection of Sioux and Pierre streets. On June 18, 1986, the mayor (Petersen) called Jacobsen and stated that the newsrack had been replaced adjacent to the light pole, where the first newsrack had originally been located. Petersen told Jacobsen that the city officials had acted in accordance with authority vested in them by two municipal ordinances requiring the streets and sidewalks to be kept free of obstructions.

Jacobsen filed the present action, contending that 1) defendants' "seizure" of his newsrack and the contents thereof violated his constitutional rights of free speech, freedom of the press, equal protection, and due process; 2) the ordinance that the city of Pierre relied upon for its actions is unconstitutional on its face or as applied; and, 3) the city applied the ordinance in a discriminatory fashion to Jacobsen's newsrack based on the editorial and advertising content of the newspapers. Jacobsen prayed the Court to grant relief in the form of compensatory and punitive damages, attorney fees, and an injunction against the city of Pierre to stop it from regulating newsracks under the present ordinance. Jacobsen claims that he can sell more newspapers and reach a greater audience (out-of-town travelers as well as local citizens of Pierre) if he places the newsrack on the street corner.

At trial, the witnesses for the city included the Mayor Grace Petersen, Dave Padgett, Pierre Public Works Director, and Mike Sines, a Captain in the Pierre police force.

The defendants rely on two municipal ordinances as authority for their temporary taking and repositioning of Jacobsen's newsrack. The defendants admit that neither of the ordinances was enacted for the purpose of regulating speech. The first ordinance prohibits all obstructions on any street, road, alley or sidewalk[2], and the second prohibits the placement of any goods or merchandise so as to obstruct any sidewalk.[3] The ordinances do not favor some view-points or ideas at the expense of

---

**1.** 28 U.S.C. § 1343(3) grants original jurisdiction to the district courts "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States...." 42 U.S.C. § 1983 is the substantive parallel to § 1343(3). Section 1983 establishes a cause of action against "[e]very person who, under color of any statute, ordinances, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution...." *See, e.g., Philadelphia News, Inc. v. Borough Council, Mayor, Manager and Director of Public Works of the Borough of Swarthmore,* 381 F.Supp. 228 (D.C.Pa.1974).

**2.** Pierre, South Dakota, Rev. Ordinance, § 6–5–101 (1978). This ordinance provides:

No person shall place, leave or keep on any public street, road, alley, sidewalk or other public ground in the city any automobile, truck or other vehicle, except when the same shall be in actual use, nor shall any person place, leave or keep on any public street, road, alley, sidewalk or other public ground in the city, any other article, substance, or material which may obstruct the free use of said street, road, alley, sidewalk or public ground, except as hereinafter provided.

**3.** Pierre, South Dakota, Rev. Ordinance, § 6–5–104 (1973). This ordinance provides in relevant part:

No person shall place any goods or merchandise for sale or exhibition upon any sidewalk

others, and thus are deemed "content-neutral".[4]

Mayor Petersen testified about the facts surrounding the city's removal of the newsrack. According to Petersen, Pierre City Ordinance § 6–5–104 requires that the sidewalks in Pierre be kept clear, and a person must have city permission to place anything on the sidewalk. [Jacobsen *never* received permission to place his newsracks on the sidewalks in Pierre. Yet the city for eight months did nothing about the placement of his first newsrack in front of the federal building on Pierre street, and the city has replaced his second newsrack in the same position without expressly giving Jacobsen permission to put his newsracks on the sidewalk.]

Mayor Petersen said at trial that the city commission, city engineers and city attorneys determined the newsrack to be a hazard to pedestrian and vehicular traffic, and moved the newsrack pursuant to authority vested in them by the two Pierre ordinances. [Defendants' trial brief states that "the mayor made the determination that the non-obstruction ordinance was being violated before the rack was removed." Defendants' Trial Brief at 9].

Petersen admitted that the ordinances contained no specified standards "in writing" to guide the city officials in its application. However, the Director of Public Works, Dave Padgett, testified that the Uniform Traffic Code is used to determine whether an object is an obstruction to traffic. He explained that the Uniform Traffic Code is a national code dealing with sight distances, clearances, and the like. Padgett did not explain how the Uniform Traffic Code was applied to Jacobsen's newsrack in making the determination that it was a traffic hazard. He testified that anything that obstructs visibility or obstructs pedestrian traffic is a hazard. Therefore, because Jacobsen's 63″ high and

23″ wide newsrack (including a placard on top of the newsrack) obstructed visibility, the city concluded that it was a hazard. As to how an object is determined to be a hazard to pedestrian traffic, Padgett stated that a newsrack anywhere on the sidewalk is a hazard to pedestrian traffic because people could run into it, but he had heard of no specific instances of a person running into a newsrack on a sidewalk in Pierre. He admitted that the benches, trees, planters and other objects that the city has installed on Pierre sidewalks are also hazards because there is a chance that a pedestrian could run into them.

Padgett testified that the sidewalk where the second newsrack was placed by Jacobsen was 25 feet wide and that 25,100 cars pass through the intersection of Pierre and Sioux streets from three directions in one day. [Pierre street turns into a one-way street going south at the intersection of Sioux avenue.] He thought that about 3,000 cars travel south on Pierre street during one day. Padgett did not indicate that these factors were taken into consideration when deciding to remove Jacobsen's newsrack. He did say that this is probably the city's busiest intersection.

Mike Sines, a captain on the Pierre police force, testified about other instances where the City has required people to remove signs or obstructions from various locations on streets, sidewalks and light poles. He also relayed to the Court times when Jacobsen's newsrack was found to contain no newspapers based on a routine check of newsracks made by the police.

## DISCUSSION

I. Challenge to Pierre Ordinances as Unconstitutional

A

■ At the outset, it must be explained why a facial challenge to the Pierre ordi-

---

except that for the purpose of loading or unloading, such articles may be placed upon the outer side of the sidewalk for such time as may be necessary to load or unload the same, but in no instance shall any such articles be left upon the sidewalk in the night time or in any such way as to obstruct the sidewalk.

**4.** See *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d

772 (1984). The Supreme Court has described content-neutral speech restrictions as those that "are justified without reference to the content of the regulated speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).

nances may not be brought in this case. According to the Supreme Court, "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771, 784 (1988).

Though the Court in *Lakewood* was addressing a licensing law and not a non-obstruction law, it stated that these concepts are at the heart of the test it uses to distinguish laws that are vulnerable to facial challenge from those that are not. *Id.* at 759, 108 S.Ct. at 2145, 100 L.Ed.2d at 784. The Court determined that a facial challenge was proper in the *Lakewood* case, but went on to state that laws of general application that are not aimed at conduct commonly associated with speech, such as the ordinances at issue in this case, are not subject to a facial challenge, but rather a challenge "as applied" is appropriate when a content-neutral law does in fact lead to regulation of speech-related activity. *Id.* at 760–61, 108 S.Ct. at 2145–46, 100 L.Ed.2d at 785. The Pierre ordinances are directed at controlling *all* obstructions on city streets and sidewalks in the interest of safety. Because the laws on their face are not aimed at expressive activity, i.e., are content-neutral, but have allowed for regulation of first amendment activity in this instance, a challenge to the ordinances "as applied" to newsracks is appropriate in this case.[5]

### B

The use of newsracks as a means of distributing newspapers is a constitu-tionally protected activity. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). "[T]ime out of mind" streets and other public places have been used as traditional public fora. *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); *see also Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Because a sidewalk is a traditional public forum for First Amendment activity, it follows that a sidewalk is an appropriate place to engage in the constitutionally protected activity of distributing newspapers through newsracks. *See Jacobsen v. U.S. Postal Service*, 812 F.2d 1151 (9th Cir.1987) (statute placing restrictions on newspaper vending machines on sidewalks owned by federal government imposed a substantial handicap on traditional use of a traditional public forum and raised a serious question of constitutional dimension, entitling newspaper publisher to preliminary injunction prohibiting enforcement of the statute).

The right of the government to limit expressive activity in traditional public fora is "sharply circumscribed". *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). However, a city may regulate the time, place and manner of communicative activity in a public forum, provided that the regulation is content-neutral, is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels of communication.[6] *See Perry*, 460 U.S. at 45, 103 S.Ct. at 954. It has already been determined in this memorandum opinion that the Pierre ordinances in question are content-neutral. *See supra* at pp. 1417–18. The ordinances must now be reviewed un-

---

5. The United States District Court in the District of New Jersey applied the Supreme Court's test described in *Lakewood* and made a similar determination. In *Gannett Satellite Information Network v. Berger*, 716 F.Supp. 140, 145–146 (N.J.1989), the court stated that a facial challenge was not appropriate against Port Authority regulations prohibiting placement of any newspaper vending machines in areas of the airport controlled by the Authority when the regulations on their face were not directed at expressive activity.

6. The Supreme Court has not spoken as a majority on whether, in an appropriate case, a regulation banning newsracks from public property entirely would be permissible. *But see, City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772–73, 108 S.Ct. 2138, 2152, 100 L.Ed.2d 771, 793 (1988) (White, J., writing in dissent, contended that newsracks could be banned entirely by a municipality).

der the other criteria governing time, place and manner restrictions on speech: 1) the ordinances must serve a significant governmental interest, 2) the ordinances must be narrowly tailored to serve that purpose, and 3) the ordinances must leave open ample alternative channels of communication. *See Perry,* 460 U.S. at 45, 103 S.Ct. at 954.

### 1. *Significant Governmental Interest*

The defendants argue that the city has a substantial governmental interest in ensuring traffic and pedestrian safety, and an interest in the accommodation of pedestrian movement. Public safety is a legitimate governmental interest. *See Heffron v. Int'l Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 650–51, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981). However, the inquiry does not end here. The city must show that the ordinances in question further the interest in public safety. *Id.* at 649–50, 654, 101 S.Ct. at 2564–65, 2567.

The defendants in this case have left significant gaps in the evidence pertaining to whether the Pierre ordinances do, in fact, further public safety. As to the accommodation of pedestrian movement, the map submitted by the city showing the location of Jacobsen's newsrack on the street corner indicates that the newsrack was not located in the line of pedestrian traffic. It was adjacent to, but not within, the natural extension of the crosswalks onto the sidewalk. It should be noted that the sidewalk where the newsrack was located is 25 feet wider than the sidewalk where the city replaced the rack. At trial, the city presented no evidence concerning the number of pedestrians that travel on the relevant sidewalks each day. In addition, the city admitted that there are other obstructions on various sidewalks in Pierre, such as trash cans, trees, planters and benches. No clear distinction was made as to how the newsrack was more of an obstruction to pedestrians than any of the other objects on the sidewalks. In fact, the Public Works Director, Dave Padgett, admitted at trial that *all* of these objects (including the newsrack) were hazards because of the chance that a pedestrian may run into them. However, Padgett was un-

aware of any incidents where a pedestrian has bumped into an object on a Pierre sidewalk. All of the above leave a serious question as to whether the Pierre ordinance prohibiting placement of objects on the sidewalks does clearly advance the city's interest in the safety of pedestrians and accommodation of the flow of pedestrian traffic.

As to the city's interest in vehicular safety, the map submitted to the Court by the city does not clearly indicate that the view of a driver traveling south on Pierre street would have been blocked by the newsrack if the driver were to make a right turn onto Sioux Avenue, as the defendants alleged. A number of photographs were submitted by the city depicting the newsrack in the position it was placed by the city, but none of the photographs display the newsrack where it was located at the street corner. Traffic lights exist at the intersection of Pierre and Sioux streets. This being so, a driver would stop on Pierre street if the light were red, and only turn right on red if no traffic were traveling from the driver's view to the left, where no obstructions exist.

At trial, Padgett stated that the city was concerned that a driver turning right on red would not be able to see pedestrians crossing Sioux Avenue because the driver's view of pedestrians would be blocked by the newsrack. However, this concern was not substantiated by facts.

No evidence was presented by the city in its brief, or at trial, of complaints made by drivers or pedestrians about the newsrack on the street corner, or of accidents or injuries caused by the newsrack. The safety interest in unobstructed vehicular and pedestrian traffic is not clearly advanced by the Pierre ordinances in question as they were applied by the city to Jacobsen's newsrack.

### 2. *Narrowly Drawn Regulations*

Although a discussion of whether the ordinances are narrowly drawn could be deemed unnecessary since the Court has concluded the ordinances do not clearly ad-

vance a significant government interest[7], the ordinances in this case are conspicuously overbroad and merit discussion.

A municipality may impose reasonable time, place and manner restrictions on sale and distribution of newspapers, but only by narrowly tailored regulations designed to serve the city's interests without unnecessarily interfering with First Amendment freedoms. *See, e.g., Heffron v. Int'l Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984). Pierre relies on no narrowly drawn ordinance to regulate newsracks. Rather, the city relies on two very general ordinances prohibiting obstructions on streets and sidewalks. The ordinances contain no standards whatsoever to guide the discretion of city officials in enforcement. The Director of Public Works testified that the city uses the Uniform Traffic Code to determine whether an object obstructs traffic. However, no evidence was presented at trial as to the specifics of the Uniform Traffic Code or how it was applied to Jacobsen's newsrack. The Director simply stated that the 63″ high, 23″ wide newsrack obstructed the sight visibility at the intersection of Sioux and Pierre streets. [There was no empirical evidence that this statement was true.] All three of the city's witnesses at trial gave very inexplicit answers when questioned about the standards used to enforce the ordinances. In fact, it was never made clear to the Court who was responsible for making the determination that Jacobsen's newsrack was an obstruction. The mayor testified that the city commission, city attorneys and city engineers working in conjunction make such determinations. However, the defendants' trial brief states that the mayor made the decision that Jacobsen's newsrack obstructed the street and sidewalk.

When government officials are allowed to regulate but have no guidelines to follow and no standards exist by which courts can measure their decisions, there is a concern with the difficulty of detecting illicit motives behind the exercise of discretion. *See City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 755–58, 108 S.Ct. 2138, 2143–44, 100 L.Ed.2d 771, 782–83 (1988). Because the circulation of newspapers through newsracks is protected first amendment activity, an ordinance that permits boundless discretion to determine the placement of newsracks is legally inadequate.

### 3. *Alternative Means of Communication*

Consideration of alternative channels of communication available to Jacobsen is unnecessary since the Pierre ordinances have already proven to be unconstitutional as applied to newsracks because: 1) the ordinances fail to advance the city's safety interests, and 2) the ordinances are not narrowly drawn.

### C

In summary, in assessing the constitutionality of an attempted regulation of the right of access to public fora, a Court must balance the interests of the municipality under its police power against the preferred status of First Amendment rights. *See Saia v. New York,* 334 U.S. 558, 562, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574 (1948). Jacobsen testified as to the hardship imposed on his business by the effect of the city's actions. The city has not refuted Jacobsen's allegations of financial loss. Jacobsen also testified that his newspapers would have reached a larger audience if his newsrack had been left on the street corner. This contention was also unrefuted by the city.

---

7. The Supreme Court lists the criteria by which time, place and manner regulations of speech-related activity are measured in the conjunctive, so that the regulation must meet *each* criteria in order to be upheld as constitutional. *See, e.g. Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74

L.Ed.2d 794 (1983) ("The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, *and* leave open ample alternative channels of communication" (emphasis added)).

The city of Pierre cannot be allowed to craft an ordinance that regulates speech-related activity so as to evade the appropriate level of First Amendment scrutiny. Distributing newspapers through newsracks is protected First Amendment activity and an ordinance affecting such distribution must be narrowly drawn in order to pass constitutional muster.[8]

### D

For these reasons the Court shall grant injunctive relief to plaintiff, declaring the Pierre, South Dakota, Rev. Ordinance, §§ 6–5–101 and 6–5–104 unconstitutional as applied to the regulation of newsracks. The city of Pierre must refrain from regulating newsracks in the absence of an ordinance that complies with the First Amendment.

### II. Procedural Due Process

### A

■ Jacobsen contends that the city of Pierre violated his right to due process by removing his newsrack without providing notice or an opportunity for a hearing. A number of the Bill of Rights safeguards are applicable to the states under the Due Process Clause of the Fourteenth Amendment.[9] Among other things, this clause guarantees that a state may not take property without providing appropriate procedural safeguards. Municipal ordinances and the action of municipal officials under color of law constitute state action and fall within the prohibitions of the Fourteenth Amendment. *Lovell v. Griffin*, 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938).

■ Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments. It requires that a person be given an opportunity to be heard at a meaningful time and place and in a meaningful manner when deprived of a constitutionally guaranteed liberty or property interest. *See Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

■ Supreme Court decisions indicate that in order to identify whether a procedure for deprivation of rights complies with the specific dictates of due process, three factors must be considered:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

At issue in *Matthews* was whether procedures for termination of Social Security disability benefits adequately complied with due process requirements. The Court in *Matthews* set forth the three factors to be considered, and then turned to a description of the procedures for the termination of benefits and how the three factors bore on the constitutional adequacy of the procedures. We cannot now turn to a description of the procedures for removal of a newsrack or any obstruction on Pierre streets and sidewalks because no fixed procedure exists. Pierre Ordinance §§ 6–5–101 and 6–5–104 contain no procedures for enforcement, and no evidence of a customary procedure was set forth by the city at trial. In fact, the mayor testified that nobody notified Jacobsen about the removal

---

**8.** A proper time, place and manner restriction on the circulation of newspapers through newsracks should contain standards such as minimum distances between racks and curbs, roadsides, posts, and doors; weight restrictions; restrictions controlling the dimensions of racks and number of racks clustered together within a given distance; bolting or chaining restrictions.

Drafters of newsrack regulations should also consider factors such as the size of the city, traffic patterns, and the width of sidewalks.

**9.** "[N]or shall any State deprive any person of life, liberty, or property without due process of law...." U.S. Const. amend. XIV.

of his newsrack because they did not have a phone number. When questioned by Jacobsen as to why they did not look in one of his newspapers for his phone number or address, the mayor explained that no one wanted to spend a dollar to buy a newspaper.

In light of the important First Amendment interests at stake in this case, and the lack of *any* existing procedural safeguards before or after a deprivation of property which is guaranteed protection under the Fourteenth Amendment, the only conclusion that this Court can reach is that Jacobsen's due process rights were violated.

### B

Plaintiff is entitled to recover compensatory damages against defendants for actual damages sustained by him as a proximate result of the deprivation of due process. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). After receiving briefs from the parties addressing the issue of damages, the Court will consider the amount of damages to be awarded plaintiff for the constitutional violations which the Court has found to have occurred. The briefs addressing damages shall be submitted to the Court by the parties pursuant to the attached order.

### III. Equal Protection

Jacobsen did not present evidence that the city applied the ordinances against his newsrack based on the content of his newspaper. In the absence of such evidence, the Court need not address Jacobsen's equal protection claim.